**Melvin EASLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–97–00302–CR.

Court of Appeals of Texas, San Antonio.

Dec. 30, 1998.

Debra L. Parker, Law Office of Debra L. Parker, San Antonio, for Appellant.

Alan E. Battaglia, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before ALMA L. LÓPEZ, Justice CATHERINE STONE, Justice SARAH B. DUNCAN, Justice.

## OPINION

CATHERINE STONE, Justice.

Melvin Easley appeals from his conviction for murder. A jury convicted Easley and assessed his punishment at twenty-five years imprisonment. In ten points of error, Easley

complains that the trial court made several erroneous evidentiary rulings, that he was prosecuted under a tardily presented indictment, and that the State failed to investigate mitigating circumstances in violation of a pre-trial order. Easley also contends that the evidence is legally and factually insufficient to support his conviction. For the following reasons, we affirm Easley's conviction.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of August 4, 1995, Easley discovered the dead body of his live-in girlfriend, Deborah Lee. Easley and Lee lived together with Lee's two children from a previous marriage, and had been engaged to be married. Several days before her death, Lee informed Easley she was ending their engagement. The night of Lee's death, Easley and Lee discussed Lee's decision about marriage. Lee reiterated her intent to end their relationship and informed Easley he should move out of her home as soon as he was financially able to do so. Easley, who normally worked evenings, took the evening off to drive around. He left the house around 9:00 p.m. and returned sometime between 1:15 a.m. and 1:30 a.m. He recalled entering the home and walking toward the master bedroom, where he was attacked by an unidentified assailant. Specifically, he claimed he sustained a blow to the chest which rendered him unconscious for almost four hours. When he regained consciousness at 4:55 a.m., he was laying naked on his bedroom floor. He noticed that his hands were cut and that Lee, also on the floor, was laying in a pool of blood. Surmising she was dead, Easley put on his clothes and went to the police station to report their attacks. Easley did not check on the children because he did not want to scare them.

At the police station, Easley reported that he and Lee had been the apparent victims of an intruder. Easley declined medical attention and the police went to Lee's home to investigate the break-in/murder. Once there, the police found the house secure; all doors and windows were locked. Responding to the officers' knocking, Lee's son opened the front door, admitting several officers into the home. Once inside, the officers did not detect signs of forced entry or disturbance. No pry marks on doors or windows were noticed. A scan of the perimeter of the home also failed to reveal signs of an intruder. Valuables inside the home in plain view, including a stereo system, a video cassette recorder, a television, and Lee's purse, appeared to be unmolested. Both Lee's struggle and death were confined to the master bedroom. After the initial investigation, Easley was taken into custody and arrested for Lee's murder.

At trial, Easley's primary defensive theory was that an unidentified assailant committed the crime. To this end, Easley put on evidence regarding his chest wound and cuts on his hands, that Lee was involved in a violent relationship with another man at the time of her murder, that Easley had a reputation as a peaceful person in the community, and that Lee's family was upset regarding their mixed-racial relationship. Easley also attempted to demonstrate that the police failed to properly investigate the case. Specifically, Easley pointed out that neither fingerprint testing, nor DNA analysis, had been conducted on the physical evidence gathered from the murder scene.

The State's case focused on contradicting Easley's story of an unidentified intruder committing the murder. To this end, the investigating officers explained there were no indications of a third party in Lee's home the night of her murder. The State offered medical testimony which questioned the probability of losing consciousness for almost four hours from a blow to the chest. Further, the State pointed out that Easley did not complain of chest pain or a head injury; he declined all medical attention. Medical testimony also indicated that the cuts on Easley's hand could have been caused when a knife slipped out of his hand. The State also introduced evidence regarding Easley's motive, including the couple's financial difficulties and Lee's decision to end their engagement. Easley's own testimony placed him at Lee's home on the night of her death.

A jury returned a guilty verdict and assessed Easley's punishment at twenty-five years imprisonment. Easley filed a motion

for new trial which was denied. This appeal follows.

## EVIDENTIARY RULINGS

Easley brings forward several points of error in which he complains about the trial court's admission or exclusion of certain pieces of evidence.

### 1. *Miranda* Warnings

■ In his first point of error, Easley contends the trial court erred in admitting his statement taken without benefit of an interpreter during custodial interrogation in violation of article 38.22, section 3(d) of the Texas Code of Criminal Procedure. Easley asserts that he was harmed by the improper introduction of the statement because it was used to impeach him, thereby damaging his credibility and causing the jury's verdict. We agree with Easley's first-stated contention, but not the second.

Article 38.22, section 3(d) renders inadmissible a deaf person's written statement resulting from a custodial interrogation unless the *Miranda* warnings contained in section 2 of article 38.22 are interpreted to the accused by a qualified interpreter. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(d) (Vernon Supp. 1998). A deaf person, under the Code of Criminal Procedure, is one who has a hearing impairment that inhibits the person's comprehension of the proceedings or communication with others. TEX.CODE CRIM. PROC. ANN. art. 38.31(g)(1) (Vernon Supp.1998).

The record in the instant case demonstrates that Easley is deaf, and thus, he was entitled to the protections afforded to deaf persons during custodial interrogation by article 38.22, section 3(d). Once taken into custody, Easley, at a minimum, was entitled to be given the *Miranda* warnings in a meaningful way, through the aid of interpreter, before giving his statement. This did not occur. Under article 38.22, section 3(d), Easley's statement was inadmissible and it was, therefore, error for the trial court to admit it into evidence.

Identification of error does not end our analysis. *See Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997) (no error, subject to few exceptions, is categorically immune from harmless error analysis). We must examine whether the error is harmful; whether it constitutes reversible error. *See* TEX. R.APP. P. 44.2. Under Rule 44.2 of the Texas Rules of Appellate Procedure, the nature of the error dictates the standard under which it will be evaluated. Constitutional error requires reversal of the judgment or punishment unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX.R.APP. P. 44.2(a). Any other error, defect, irregularity, or variance not affecting substantial rights must be disregarded. TEX.R.APP. P. 44.2(b).

■ Although the error at issue flows from non-compliance with a statutory mandate, the error is nevertheless constitutional error because it implicates the constitutional right against self-incrimination. *See Jordy v. State,* 969 S.W.2d 528, 532 (Tex.App.—Fort Worth 1998, no pet.); *Brown v. State,* 960 S.W.2d 265, 271 (Tex.App.—Corpus Christi 1997, no pet.). Accordingly, we will reverse unless the record establishes beyond a reasonable doubt that the statement's introduction did not contribute to Easley's conviction. *See* TEX.R.APP. P. 44.2(a).

■ In the instant case, the erroneously admitted custodial statement was used to impeach Easley on cross-examination. We first note that Easley's challenged statement is exculpatory in nature. With it, the State noted both omissions between Easley's custodial statement and the voluntary statement he prepared for the grand jury, and a discrepancy in his story regarding the timing of events. Notwithstanding the statement's introduction, the State put on other evidence damaging to Easley's credibility. That is, medical testimony discredited Easley's claim that a blow to his chest knocked him unconscious for approximately four hours. Easley declined medical attention at the police station and the record indicates that he never complained of chest or head pain while in custody. Equally incredible was Easley's claim that he woke up naked in his bedroom with cuts on his hands. Further, the police investigation found no evidence that an intruder had been in Lee's house on the night

of the murder. There is ample evidence contradicting Easley's version of events from which the jury could conclude that he was not telling the truth. Accordingly, we find beyond a reasonable doubt that the statement's introduction did not contribute to the conviction. *See Dowthitt v. State,* 931 S.W.2d 244, 263 (Tex.Crim.App.1996) (finding improper introduction of statement harmless where *defendant's* credibility damaged by other evidence). Point of error number one is overruled.

### 2. Evidence Regarding Adam Jedryczka

■ Under points of error four and five, Easley argues that the trial court erroneously excluded evidence supporting his defensive theory that a third party, namely Adam Jedryczka, murdered Lee. Specifically, the trial court would not allow into evidence testimony regarding an alleged violent, sexual relationship between Lee and Adam Jedryczka, and a calendar which purportedly chronicled this relationship. Easley argues that such evidence was relevant, and therefore admissible, for the purpose of establishing Jedryczka's motive and opportunity to commit the crime. We will not disturb the trial court's ruling absent a clear abuse of discretion. *Harwood v. State,* 961 S.W.2d 531, 537 (Tex.App.—San Antonio 1997, no pet.).

■ Evidence regarding a third party's motive to commit the crime with which the accused is charged is inadmissible unless other evidence linking the third person to the crime is proffered. *Spence v. State,* 795 S.W.2d 743, 754 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991); *Williams v. State,* 643 S.W.2d 477, 483 (Tex.App.—Austin 1982, no pet.). This "other" evidence is testimony which not only demonstrates the third person's opportunity to commit the crime, but also incriminates such person as the culprit. *Spence,* 795 S.W.2d at 755 (quoting *Porch v. State,* 50 Tex.Crim. 335, 99 S.W. 102, 106 (Tex.Crim.App.1906)).

Easley's proffered testimony indicates only that Lee and Jedryczka may have had a turbulent romantic relationship and that the relationship *may* have continued up until the time of Lee's death. Absent is direct or circumstantial evidence linking Jedryczka to the murder. Easley suggests that Jedryczka's opportunity to commit the murder is demonstrated by the fact that Jedryczka worked evenings near Lee's residence. Even assuming Jedryczka's work schedule put him in the vicinity of Lee's residence on the night of the murder, the proffered evidence nevertheless fails to support the conclusion that Jedryczka may have committed the murder. Jedryczka testified that on the night of Lee's murder he left work at approximately 11:00 p.m. and went home. This testimony was uncontradicted. Because the record does not contain additional evidence demonstrating Jedryczka's involvement in Lee's murder, we find the trial court did not err in excluding both the testimony regarding a relationship between Jedryczka and Lee and the calendar. *See id.* Points of error numbers four and five are overruled.

### 3. Threats from Marilyn Thompson

■ In his sixth point of error, Easley argues that the trial court wrongfully excluded as hearsay testimony regarding threats Lee's sister made to Lee prior to her death. Specifically, the trial court disallowed testimony from two witnesses that Lee had informed them that her sister, Marilyn Thompson, threatened Lee that if she did not end her relationship with Easley, Thompson would ask David Lee, Lee's ex-husband, to remove the children from Lee's home. Easley contends that the testimony was admissible under Texas Rule of Evidence 803(3) to show Lee's intent to end her relationship with Easley. Further, Easley contends that such testimony was relevant to demonstrate David Lee's motive to harm Lee. We disagree, finding that several rules of evidence support the trial court's ruling.

■ Rule 803(3) permits the introduction of hearsay testimony regarding a declarant's state of mind, emotion, sensation, or physical condition such as intent, plan, motive, design, mental feeling, pain or bodily health. Tex.R. Evid. 803(3). Here, Lee's hearsay statement does not fall within the ambit of Rule 803(3) because it does not relate to Lee's state of mind. Rather, the statement merely conveys Lee's understand-

ing of her sister's disapproval of her relationship with Easley. Even if Lee's statement was admissible pursuant to Rule 803(3), the alleged threat itself does not fall within an exception to the hearsay rule. Multiple hearsay, hearsay within hearsay, is properly excluded if each hearsay statement is not independently admissible. *See* TEX.R. EVID. 805; *All Saints Episcopal Hosp. v. M.S.,* 791 S.W.2d 321, 323 (Tex.App.—Fort Worth 1990), *remanded by agr.,* 810 S.W.2d 528 (Mo.App.W.D.1991). Moreover, even assuming that Easley could overcome the hearsay hurdle, the "threat" testimony was properly excluded on the basis of relevancy. *See* TEX.R. EVID. 401. Lee's reasons for ending her relationship with Easley are of no consequence to the determination of the identity of Lee's murderer. Accordingly, we find that the trial court did not err in excluding the threat testimony. Point of error number six is overruled.

### 4. Polygraph Evidence

■ Lastly, Easley contends it was error for the trial court to exclude testimony regarding his polygraph examination results. We disagree. In Texas, evidence relating to polygraph tests is inadmissible for any purpose. *See Tennard v. State,* 802 S.W.2d 678, 683 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *see also United States v. Scheffer,* 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (federal and state governments may prohibit use of polygraph evidence). Therefore, the trial court did not err in excluding it. Point of error number seven is overruled.

### TARDY INDICTMENT

■ In two points of error, Easley complains that he was prosecuted under a tardily presented indictment in violation of article 32.01 of the Texas Code of Criminal Procedure. Article 32.01, at the time of Easley's trial, provided:

When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant at the next term of the court which is held after his commitment or admission to bail.

TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon 1989).[1] Simply, the statute mandates the dismissal of the prosecution of the defendant unless the indictment or information is presented against the defendant at the next term of court after commitment or release on bail. *Ex parte Lawson,* 966 S.W.2d 532, 533 (Tex.App.—San Antonio 1996, pet. filed). Article 28.061, an enforcement mechanism for article 32.01, barred further prosecution for the offense charged and for any other offense arising out of the same transaction. *See* TEX.CODE CRIM. PROC. ANN. art. 28.061 (Vernon 1989).[2]

The record in the instant case confirms Easley's complaint that his indictment was not timely presented. Easley was arrested on August 4, 1995 and released on bond on August 10, 1995. The next term after Easley's release on bond was the September–October term, *see* TEX. GOV'T CODE ANN. § 24.404 (Vernon 1989), and he was not indicted until the January–February 1996 term. However, because this issue is raised for the first time on appeal, we do not reach the merits of Easley's first complaint. *See* TEX.R.APP. P. 33.1. We note that *Ex parte Pena,* 955 S.W.2d 325 (Tex.App.—San Antonio 1997, pet. ref'd) and *Norton v. State,* 918 S.W.2d 25 (Tex.App.—Houston [14th Dist.] 1996), *pet. dism'd, improvidently granted,* 969 S.W.2d 3 (Tex.Crim.App.1998), relied upon by Easley, are inapposite to the instant case. Both cases involve habeas corpus proceedings. Without a developed record, we are unable to address the issue of good cause. Point of error number two is overruled.

■ Next, Easley claims his trial counsel was ineffective for failing to request

---

**1.** In 1997, article 32.01 was amended. The amendment allows the State at least six months in which to present the charging instrument.

**2.** In 1997, the Legislature amended article 28.061, rendering it inapplicable to article 32.01.

habeas corpus relief in light of the tardy indictment. Easley argues that but for his counsel's failure to pursue such an avenue, he would not have been subjected to trial or conviction; thus, he concludes he is entitled to a new trial based on his trial counsel's ineffective performance. Easley's argument fails for two reasons.

First, this argument labors under the incorrect assumption that the State would have been unable to establish good cause for the delay, resulting in dismissal of the case. *See* Tex.Code Crim. Proc. Ann. art. 32.01 (Vernon 1989). Stated differently, harm cannot be determined from the record before us. Second, the law upon which Easley relies for reversal has changed. In *Ex parte Butler,* 884 S.W.2d 782 (Tex.Crim.App.1994), the Court of Criminal Appeals addressed a claim for ineffectiveness based upon a law which had changed after the date of the trial. In applying the two-prong test of *Strickland,* the court instructed that trial counsel's performance is to be judged under the law at the time of trial, and prejudice is to be determined under current governing law. *Ex parte Butler,* 884 S.W.2d at 784–83 (relying upon *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). In the instant case, it is clear that trial counsel's performance fell below an objective standard of reasonableness. That is, there could be no tactical reason for choosing not to raise a claim which could dismiss the indictment with prejudice. *Cf. Jaile v. State,* 836 S.W.2d 680, 687 (Tex.App.—El Paso 1992, no pet.) (finding trial counsel not ineffective for failing to urge speedy trial motion hoping that complainant's memory as to identification of her assailant might dwindle while at same time strategically taking the risk that some alibi evidence might be lost). However, under current law, the State would be free to refile charges once the trial court dismissed the case under article 32.01. *See* Tex.Code Crim. Proc. Ann. art. 28.061 (Vernon Supp. 1998); Tex.Code Crim. Proc. Ann. art. 15.14 (Vernon Supp.1998) (state may rearrest defendant for same offense if prosecution dismissed under article 32.01). Thus, Easley cannot show harm under *Strickland. See Ex parte Butler,* 884 S.W.2d at 783–84. Point of error number three is overruled.

### FAILURE TO INVESTIGATE POTENTIALLY MITIGATING EVIDENCE

In his eighth point of error, Easley claims the State's failure to investigate potentially mitigating evidence in violation of a pre-trial order prevented him from having a fair trial. Finding no record support for this contention, we reject it.

First, we cannot determine from the record whether the State complied with the pre-trial order. There is testimony that no other individuals were suspects of the investigation. This admission, contrary to Easley's assertion, does not mean that the State withheld exculpatory evidence or ignored possible suspects. Rather, this statement merely indicates that the State's investigation did not point to other possible suspects. Easley's complaint regarding a cursory or haphazard investigation was an issue for the jury to consider in determining Easley's guilt. Point of error number eight is overruled.

### SUFFICIENCY OF EVIDENCE

▋▋ In his final points of error, Easley challenges the legal and factual sufficiency of the evidence to support his conviction. In evaluating the legal sufficiency of the evidence, this court, after viewing the evidence in the light most favorable to the jury's verdict, must determine .whether any rational trier of fact would have found beyond a reasonable doubt the essential elements of the offense. *Jackson v. Virginia,* 443 U.S. 307, ·319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 156–57 (Tex.Crim.App.1991). In conducting a factual sufficiency review, we do not view the evidence in the light most favorable to the prosecution. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Rather, we review the entire record and decide whether the overwhelming weight of the evidence so contradicts the verdict as to make that verdict clearly wrong or unjust. *Id.* Unless the verdict shocks the conscience or clearly demonstrates bias, the evidence will be deemed factually sufficient. *See id.* at 135.

▋▋ Under both standards we do not substitute our judgment for that of the fact

finder. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Vanderbilt v. State,* 629 S.W.2d 709, 716 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). In this regard, the jury is entitled "to draw reasonable inferences from basic facts to ultimate facts." *Dumas v. State,* 812 S.W.2d 611, 615 (Tex.App.— Dallas 1991, pet. ref'd). The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused. *Alexander v. State,* 740 S.W.2d 749, 758 (Tex.Crim.App.1987). The State may prove its case by circumstantial evidence so long as it shoulders its burden of proving all of the elements of the charged offense beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

Applying the proper standards of review, we find the record contains legally and factually sufficient evidence upon which the jury could find that Easley caused the death of Lee by stabbing. Clearly, the State relied on circumstantial evidence to prove that Easley stabbed Lee to death. To this end, the State showed that Easley had the motive and opportunity to murder Lee. *See Harris v. State,* 727 S.W.2d 537, 542 (Tex.Crim.App. 1987) (evidence of motive is admissible as circumstance indicating guilt). Lee had recently called off her engagement to Easley and had asked him to move out of the house. In fact, the night of Lee's death, the couple had discussed the marriage topic. After this discussion, Easley left the house to drive around town rather than go to work. Easley's own testimony places him inside Lee's home the night of the murder.

The State's evidence contradicted Easley's story regarding an attack from a third party. As noted, medical testimony suggested that a blow to the chest could not render an individual unconscious for almost four hours; death, rather than unconsciousness, was more probable. At trial, Easley presented an alternative theory regarding his black out: a head injury. Under this theory, when Easley was knocked to the ground, he blacked out when his head hit the carpeted floor. The State's medical expert testified that even under this scenario, Easley would have exhibited signs of a head injury or complained of a head injury. The jury learned that Easley declined medical attention both at the police station and once he was admitted at the jail. Medical evidence also suggested a sinister explanation regarding the cause of the cuts on Easley's hands. Dr. Bux testified that Easley's wounds could have resulted when his hand slipped from a knife handle, causing his hand to slide down the knife blade. The jury could infer that Easley cut his hands while delivering multiple blows to Lee. Further, DNA analysis could not exclude the possibility that Easley's blood was found on a bedside lamp. From this, the jury could infer that Easley's blood was thrown onto the lamp during the violent knife attack.

Finding that the evidence is legally and factually sufficient, points of error numbers nine and ten are overruled.

The judgment of the trial court is affirmed.

DUNCAN, J., concurring in the judgment only.