TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00168-CR






Lawrence Randall Wiley, Jr. a/k/a Lawrence R. Wiley, Jr. Appellant


v.


The State of Texas, Appellee







FROM THE CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

NO. 0792673D, HONORABLE SHAREN WILSON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Appellant Lawrence Randall Wiley was charged with the offenses of aggravated
assault and attempted murder. See Tex. Pen. Code Ann. §§ 15.01, 19.02, 22.02(a)(1) (West 1994).
He pleaded guilty to aggravated assault and pleaded not guilty to attempted murder. A jury found
him guilty of both offenses and assessed punishment at fifteen years' imprisonment for each offense.
Appellant challenges his conviction for attempted murder contending that the evidence is legally and
factually insufficient to prove that he had a specific intent to kill the complainant. For the reasons
that follow, we affirm the judgment of conviction. 


Background


 The complainant, appellant's former girlfriend, testified about events that occurred
on Saturday morning, December 30, 2000, while she was at work at Huguley Hospital. Appellant
called her at 7:45 and told her that he wanted to talk to her in the parking lot. The complainant went
out the hospital's main entrance to meet appellant. She immediately noticed appellant's pickup truck
parked towards the back of the hospital's parking lot located near the main entrance. Appellant was
sitting alone in the truck holding a handgun. As she approached the truck, appellant pointed the gun
at her and shot her. She felt a sharp pain in her arm and fell. After hearing two more gunshots, she
ran into the hospital. As she was running, she heard one more gunshot. Once inside the hospital's
main doors, she collapsed. After receiving emergency treatment, she was transferred to a trauma unit
at another hospital in Fort Worth where doctors removed a bullet from her that was later determined
to have come from appellant's gun. The bullet had traveled through the complainant's arm and lung
and lodged about an inch from her spinal cord. 

 Other witnesses testified about the incident. Juliana Osborn was leaving the hospital
after working a twelve-hour shift. She noticed a white pickup truck at the back of the parking lot.
She noticed a man inside the truck talking on a phone with the passenger window down. As she de-iced her windows, she heard a backfire sound, another backfire sound and then a woman screaming.
She heard a third backfire sound and saw a woman returning slowly to the hospital while the man
in the pickup truck sped away. Leroy Lampson was leaving the hospital when he observed the white
pickup truck. He saw a man standing outside the pickup, heard one gunshot and then two more
gunshots before seeing a woman fall down. The driver of the truck then jumped back into the pickup
while a woman ran into the hospital.

 Appellant's friend, Don Yandell, testified that later that afternoon, appellant arrived
at Yandell's father's house in Johnson County. Appellant had blood on his chin and his shirt. After
spending several hours talking with Yandell, appellant finally told him that earlier in the day he had
shot at the complainant and then had tried to kill himself. Yandell immediately told his father about
this conversation. Yandell's father spoke with appellant and retrieved from appellant's truck the
handgun appellant used to shoot the complainant. Yandell's father then took appellant to a hospital
in Fort Worth where the police arrested him.

 Appellant testified at trial. Appellant stated that he suffers from bipolar disorder and
that he was in one of his severe depression cycles at the time of the shooting. He had become very
depressed after his relationship with the complainant ended. He moved out of her house about a
week before the shooting. He explained that two days before the shooting, he went to his father's
house and without informing him, took his father's handgun. At the time he took the gun, appellant
intended to kill himself. He decided that he would drive to the hospital where the complainant
worked, phone her to come to the parking lot, and then kill himself in front of her by shooting
himself in the head. Appellant testified that what occurred the morning of December 30 was that
he drove to the hospital and then phoned the complainant to come to the parking lot. When he first
saw the complainant, he fired a shot over the top of her head intending to scare her. He fired a
second shot and saw the complainant go down on her knees. He jumped out of the truck to see if
she was okay, he saw her run back into the hospital, and then got back into his truck. Then he tried
to kill himself. He pointed the gun under his chin but the gun kicked and cut his chin. He was out
of bullets so he drove away from the hospital. 


Discussion


 A person commits attempted murder if, with the specific intent to commit murder,
he does an act amounting to more than mere preparation that tends but fails to effect the commission
of the intended murder. See Tex. Pen. Code Ann. § 15.01(a) (West 1994). The State alleged that
appellant shot the complainant with a deadly weapon intending to kill her. Appellant contends that
the evidence is legally and factually insufficient to support his conviction for attempted murder. 
Specifically, appellant contends that the evidence is insufficient to show that he had the specific
intent to kill his former girlfriend. Intent can be inferred from the acts, words, and conduct of the
accused. Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); Lee v. State, 964 S.W.2d
3, 10 (Tex. App.--Houston [1st Dist.] 1997, pet. ref'd). Additionally, the specific intent to kill may
be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent
that death or serious bodily injury could not result. Medina v. State, 7 S.W.3d 633, 637 (Tex. Crim.
App. 1999); Staley v. State, 887 S.W.2d 885, 889 (Tex. Crim. App. 1994). 

 Determining the legal and factual sufficiency of the evidence requires the
implementation of separate and distinct legal standards. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). A legal sufficiency review calls upon the reviewing court to view the evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 309 (1979); Staley, 887 S.W.2d at 888. Any inconsistencies in the evidence should be resolved
in favor of the verdict. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). 

 The standard of review is the same in both direct and circumstantial evidence cases. 
King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). The State may prove its case by
circumstantial evidence if it proves all of the elements of the charged offense beyond a reasonable
doubt. Easley v. State, 986 S.W.2d 264, 271 (Tex. App.--San Antonio 1998, no pet.). The
sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact
in isolation need not establish the guilt of the accused. Alexander v. State, 740 S.W.2d 749, 758
(Tex. Crim. App. 1987). The jury is the exclusive judge of the facts proved, the weight to be given
the testimony, and the credibility of the witnesses. See Tex. Code Crim. Proc. Ann. art. 38.04 (West
1979); Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The jury is free to reject
or accept any or all of the evidence presented by either party. Saxton v. State, 804 S.W.2d 910, 914
(Tex. Crim. App. 1991). The jury maintains the power to draw reasonable inferences from basic
facts to ultimate facts. Welch v. State, 993 S.W.2d 692, 693 (Tex. App.--San Antonio 1999, no
pet.). 

 In determining the factual sufficiency of the elements of the offense, the reviewing
court views all of the evidence in a neutral light. Johnson, 23 S.W.3d at 6-7. The court reviews the
evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and
compares it with the evidence that tends to disprove that fact. Id. In conducting its factual
sufficiency review, an appellate court reviews the jury's weighing of the evidence and is authorized
to disagree with the jury's determination. Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App.
1996). The reviewing court, however, does not substitute its judgment for that of the jury and should
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Id. at 129. The reviewing court may not reverse a jury's decision simply
because it disagrees with the result. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 

 The circumstances surrounding the incident here support the jury's finding that
appellant acted with the specific intent to kill the complainant. The jury, as the exclusive judge of
the evidence and the weight to be given the testimony, was free to draw reasonable inferences from
the basic facts proved. Evidence supporting the jury's determination that appellant intended to kill
the complainant included appellant's call to the complainant to come meet him in the parking lot of
her work early on a Saturday morning. Appellant waited for the complainant in a back area of the
hospital parking lot while sitting alone in his truck holding a handgun that he had taken
surreptitiously from his father's house two days earlier. Appellant pointed the gun at the
complainant and shot her. A bullet from the gun hit the complainant in the arm, passed through her
chest, and lodged near her spinal column. The jury had the benefit of watching the witnesses testify
and could reasonably discount the credibility of appellant's explanation of the shooting, that is, that
he only shot toward the complaint and that he had aimed above her head. The use of the gun under
these circumstances was a "manner of use" in which death or serious bodily injury was likely to
occur. Appellant's act of shooting at the complainant supports the jury's conclusion that appellant
intended to kill the complainant. The jury was free to resolve the ambiguities in the State's favor
and conclude that appellant intended to kill the complainant. 

 After reviewing the evidence in the light most favorable to the verdict, and in a
neutral light, we hold that the jury could have reasonably concluded that appellant intended to kill
the complainant. Appellant's contentions are overruled. We affirm the judgment of conviction.



 

 Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: January 16, 2003

Do Not Publish