# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00651-CR

**Martin Aleman, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
## NO. CR2002-246, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Martin Aleman of aggravated robbery and sentenced him to sixty years' imprisonment. *See* Tex. Pen. Code Ann. § 29.03 (West 2003). He appeals, contending the evidence is legally and factually insufficient to support his conviction, and arguing that the trial court should have included in the jury charge the lesser-included offense of theft. *See id*. § 31.03 (West Supp. 2004). We affirm the conviction.

Jeff Krivacka was the manager of a Sac-N-Pac store in New Braunfels and was working there when it was robbed on May 21, 2001; Sarah Armstrong was working as cashier behind the counter. Krivacka testified that the store had two safes behind the counter, one called a "drop box," and a larger safe below the register. Store policy required employees to take money exceeding $75 from the cash register and put it in the drop box. Some of the money was bundled in stacks of about $50 by wrapping the bundles in strips of white paper from the adding machine; other bills were

placed in envelopes, paper clipped together, or placed loose in the drop box. Krivacka testified that at about 6:00 p.m., a man wearing a blue-and-white checkered shirt, blue jeans, and a red bandanna walked into the store, threw a display rack to the floor, banged something on the counter and yelled something in Spanish. Krivacka could not tell what was banged on the counter, but he thought it was a weapon of some kind and was frightened for his safety. Armstrong opened the drop box and the man took about $500 and fled, running to the right down Live Oak Street. Krivacka and Armstrong called the police, described the man, and reported the direction in which he had run. Krivacka testified that Armstrong was scared, shaken, and tearful after the robbery. Armstrong no longer works for Sac-N-Pac, and Krivacka did not know where she lived.

Jesus Villalobos, who was also working at the Sac-N-Pac on the day of the robbery, testified that a man walked into the store and, speaking in Spanish, demanded money from Armstrong. Villalobos said that the man held an object that appeared to be a sawed-off shotgun or rifle of some kind wrapped in a dark blanket. When the man banged the object on the counter, Villalobos heard metal and ducked because he "was scared that he would shoot somebody." Villalobos could not identify Aleman as the robber, but after Aleman was asked during Villalobos's testimony at trial to put on the blue-checkered shirt and bandanna, Villalobos testified that he resembled him, whereas another Hispanic male who was asked to put on the items did not.

New Braunfels Police Officer Mike Garcia testified that after being told that the robber was wearing a blue plaid or checkered shirt and a red bandanna as he ran north on Live Oak Street, Garcia went about one block to the corner of West Mill Street. A resident of the area had seen a similarly dressed man come through the area recently. Garcia looked across the street and saw

2

Aleman standing in a driveway with two other men; Aleman was wearing a blue plaid shirt and blue jeans and smelled strongly of alcohol. Garcia spoke to the other men, one of whom, John Rigolatto, lived at the address, and then frisked Aleman and asked him to remain standing against the patrol car until a backup unit arrived. Garcia found a red bandanna and a dark grey shirt in Rigolatto's yard, and Rigolatto said neither item belonged to him. Garcia then spoke to Anita Ibarra, who lives across the street, who told Garcia she had found a tire iron that did not belong to her in her driveway. Krivacka and Villalobos said the bandanna found in Rigolatto's yard looked like the bandanna worn by the robber, while the shirt resembled the material wrapped around the metal object he carried.

New Braunfels Police Officer James Bell testified that he searched Aleman at the scene of his arrest. During the search, Bell found $508 tucked into the front of Aleman's t-shirt. There were several bundles of cash wrapped with cashier's tape, some bills paper clipped together, and some loose bills. Bell also testified that a tire iron wrapped in a shirt would resemble a sawed-off shotgun or rifle and that a tire iron could cause serious injury if used to strike or stab at someone.

Trinidad Urdiales lives on the corner of Live Oak and Mill Streets, about one block from the Sac-N-Pac. He testified that at about 6:00 p.m. on May 21, he saw a man walking quickly up the street, looking behind him, and acting as if someone was chasing him. The man wore blue jeans, a blue-and-white checked shirt, and something red on his head, and he carried a shirt or a jacket folded on his arm. Urdiales lost sight of the man briefly near Anita Ibarra's house and then saw him again across the street at John Rigolatto's driveway. Urdiales could not tell if the man was still carrying anything when he reappeared, but he thought the man was still wearing the red thing on his head. When a police car came by, Urdiales told the officer that he had seen a man matching

3

the robbery suspect's description walking by. Ibarra, who lives around the corner from the Sac-N-Pac, testified that sometime between 4:00 p.m. and about 6:00 p.m. on May 21, someone left a tire iron on her driveway. Rigolatto testified that a shirt and red handkerchief that did not belong to him were found in his yard on the evening of May 21; he was sure the shirt had not been in his yard earlier that day.

In reviewing the evidence for legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In examining factual sufficiency, we view all of the evidence in a neutral light and will set aside a verdict only if the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the verdict. *Id.* at 11. We must be appropriately deferential to the jury's judgment and should not substantially intrude upon the jury's role as the sole judge of the weight and credibility given to witness testimony. *Id.* at 7; *see Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.—Austin 2001, pet. ref'd). "The State may prove its case by circumstantial evidence if it proves all of the elements of the charged offense beyond a reasonable doubt." *Barnes*, 62 S.W.3d at 297 (citing *Easley v. State*, 986 S.W.2d 264, 271 (Tex. App.—San Antonio 1998, no pet.)). We determine the sufficiency of the evidence based on the cumulative effect of all of the evidence, not each fact in isolation. *Id.* at 297. The jury may accept or reject all or any of the evidence presented by either side, may draw reasonable inferences from the evidence, and must decide how to reconcile any evidentiary conflicts. *Id.* at 298.

4

In arguing that the evidence is legally and factually insufficient, Aleman points out that no one from the store was able to identify him as the robber, that no one identified the tire iron as the weapon used in the robbery, and that the evidence is purely circumstantial.

The evidence is legally sufficient to support the jury's verdict. Moments after the robbery, Urdiales saw a man matching the description of the robber walking quickly up the street, acting as if he was being followed and carrying a shirt or a jacket over his arm. Urdiales lost sight of the man briefly in front of Ibarra's house, and then saw him again in Rigolatto's driveway. The police found Aleman in Rigolatto's driveway, wearing a shirt that matched the description and carrying under his shirt bundles of money wrapped in cashier's tape. A shirt that looked like the one used to conceal the unknown metal object and a red bandanna were found in Rigolatto's yard, and a tire iron was found in Ibarra's driveway. A police officer testified that a tire iron wrapped in a shirt would resemble a shotgun or rifle, and the store's employees believed it was a gun and feared for their lives. A reasonable jury could clearly have made the inference that the man Urdiales saw had robbed the Sac-N-Pac, and that Aleman, who was detained in Rigolatto's driveway shortly thereafter, was that same man. *See Johnson*, 23 S.W.3d at 7; *Barnes*, 62 S.W.3d at 297-98. We overrule Aleman's first issue on appeal.

As for factual sufficiency, having reviewed all of the evidence in a neutral light, we do not find that the proof of guilt presented by the State is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the verdict. *See Johnson*, 23 S.W.3d at 11. We overrule Aleman's second issue on appeal.

5

In his third and final issue on appeal, Aleman argues that he was entitled to a jury charge on the lesser-included offense of theft.[1] *See* Tex. Pen. Code Ann. § 31.03. In evaluating such an argument, we apply a two-part test, first determining whether the offense is a lesser-included offense of the charged offense, *see* Tex. Code Crim. Proc. Ann. art. 37.09 (West 1981), and then examining whether the record contains some evidence that would allow a rational jury to find the defendant guilty only of the lesser offense. *Feldman v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002) (citing *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985)). We must consider all of the evidence presented by both sides. *See Dowden v. State*, 758 S.W.2d 264, 269 (Tex. Crim. App. 1988). If any evidence raises the issue of a lesser-included offense, the defendant is entitled to such an instruction. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994). However, it is not enough that the jury might disbelieve some crucial evidence pertaining to the greater, charged offense. *Id*. Instead, there must be some evidence directly germane to the lesser offense before an instruction is warranted. *Id*. If a defendant presents no evidence and there is no other evidence showing he is guilty only of the lesser offense, a jury instruction is not required. *Id*.; *Jones v. State*, 921 S.W.2d 361, 364 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

---

[1]  A person commits aggravated robbery if he, in the course of committing theft, "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death," and uses or exhibits a deadly weapon. Tex. Pen. Code Ann. §§ 29.02(a)(2), .03(a)(2) (West 2003). A deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17)(B) (West Supp. 2004). A person commits theft if he, acting without the owner's effective consent, "appropriates property with intent to deprive the owner of property." *Id*. § 31.03 (West Supp. 2004). Theft is a lesser-included offense to robbery and aggravated robbery. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).

The Sac-N-Pac employees testified that they heard a metal object clank on the counter and they believed the robber had a firearm concealed inside the shirt. Both Krivacka and Villalobos testified that they feared for their lives and that Armstrong was frightened and shaken after the robbery. The jury could infer from the evidence that the concealed item was a metal object. A tire iron, or any other metal object that might have been concealed, could be used to cause serious bodily injury or death and, therefore, would qualify as a deadly weapon. There is no evidence that Aleman, if guilty, was guilty of only the lesser-included offense of theft. *See Feldman*, 71 S.W.3d at 750. We hold that the trial court did not err in refusing to include in the jury charge an instruction on theft.

Having overruled Aleman's three issues on appeal, we affirm the trial court's judgment of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: April 8, 2004

Do Not Publish