# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00450-CR

**Pete Allejos, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 9024019, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Pete Allejos, Jr. of capital murder, and the district court rendered a judgment on the verdict, sentencing him to life imprisonment. *See* Tex. Pen. Code Ann. § 19.03 (West Supp. 2004). He contends on appeal that the evidence is legally and factually insufficient to support the jury's verdict. We affirm the district court's judgment of conviction.

### Standard of Review

In reviewing the evidence for legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In examining factual sufficiency, we view all of the evidence in a neutral light

and will set aside a verdict only if the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the verdict. *Id*. at 11. We must be appropriately deferential to the jury's judgment and should not substantially intrude upon the jury's role as the sole judge of the weight and credibility given to witness testimony. *Id.* at 7; *see Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.—Austin 2001, pet. ref'd). "The State may prove its case by circumstantial evidence if it proves all of the elements of the charged offense beyond a reasonable doubt." *Barnes*, 62 S.W.3d at 297 (citing *Easley v. State*, 986 S.W.2d 264, 271 (Tex. App.—San Antonio 1998, no pet.)). We determine the sufficiency of the evidence based on the cumulative effect of all of the evidence, not each fact in isolation. *Id*. at 297. The jury may accept or reject all or any of the evidence presented by either side, may draw reasonable inferences from the evidence, and must decide how to reconcile any evidentiary conflicts. *Id*. at 298. We apply the same standards to direct and circumstantial evidence. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

**Factual Summary and Discussion**

Eduardo Escamilla testified that on the evening of November 9, 2000, he, the victim Marcos Rivas, and other friends were at his house. He was intoxicated and had been smoking marijuana. Escamilla and Frank Badillo were in the kitchen when appellant and Rick Miles entered, both holding guns. Appellant and Miles said that they "were going to get Marc" and ordered Escamilla and Badillo into the bathroom. While in the bathroom, Escamilla, who knew Rivas sold drugs for a living and had heard that Rivas had stolen money "from those guys," heard Rivas say "that he had the money, that he would pay them." Appellant ordered Escamilla and Badillo out of

2

the bathroom and then left; Escamilla did not see Miles or Rivas in the house. Escamilla testified that about thirty minutes later, Miles called and said "it was done." Escamilla, who concluded that Miles and appellant had killed Rivas, told Miles that he was not going to call the police. Escamilla testified that he initially lied to the police about Rivas's death, but then regretted the lie and told the police the truth. Escamilla testified that he had met both Miles and appellant before through friends and that there was no chance that he was confused about appellant being with Miles that night. Francisco Badillo, who had used marijuana and another drug that night, testified similarly to Escamilla, but could only identify Miles as one of the two armed intruders. Both Escamilla and Badillo left Austin after the murder, fearing they were in danger.

At about 5:00 a.m. on November 10, a man living near an intersection in southeast Austin heard several noises that sounded like either a car backfiring or gun shots. He looked out the window and saw a mid-sized, dark-colored pickup truck; the light was too low to see what color the truck was or how many people were in the truck. The police were called to the intersection, where they found Rivas lying dead in the street, shot multiple times.

The police searched appellant's father's home, where they believed appellant was living, and found several boxes of ammunition in the room appellant's father said belonged to appellant. An FBI analyst testified that bullet fragments from Rivas's body were "analytically indistinguishable" from some of the ammunition found in the search, but also could have been other ammunition made by the manufacturer at the same time. The police also searched Miles's blue pickup truck, where they found a scale with white powder residue on it, $17,820 in cash, and a blood smear, which was shown to be a mixture of more than one person's DNA. Analysis showed a high

3

probability that the sample contained Rivas's, appellant's, and Miles's DNA.[1]  The sample was mostly Rivas's DNA, with some of appellant's and very little of Miles's.  The DNA analyst testified that DNA can come from sweat or skin, not only blood.

Appellant's father testified that appellant had not lived in his house for about two years before the murder and that Miles, who was a relative, was in the house the day before the murder.  Miles, who pleaded guilty to the aggravated kidnaping and murder of Rivas, testified that he met Rivas at Escamilla's house, had a "small discussion," and left the house with Rivas.  Once in Miles's truck, Rivas pulled a gun on Miles and Miles kicked Rivas out of the truck and shot him several times.  Miles testified that another man, and not appellant, was with Miles that night.

Despite Miles's testimony and some minor inconsistencies between Escamilla's and Badillo's testimony, the evidence is both legally and factually sufficient to support the jury's guilty verdict. Escamilla knew appellant on sight and testified that he was certain appellant was with Miles that night and he and Badillo gave testimony demonstrating that Miles and the other intruder were working together with an intention of taking Rivas away.  Analysis of the blood stain from the truck showed a probability that it was a combination of blood from Rivas, appellant, and perhaps Miles. The fact that there was some conflict in the evidence or a lack of an eyewitness who saw appellant actually at the scene of the shooting does not support a finding that the evidence is insufficient to

---

[1]  The analyst testified that the chance of a random, unrelated person other than Rivas was one in more than 5.38 million, someone other than appellant was one in more than 20,700, and someone other than Miles contributing was one in more than 442.  The analyst said that to state that a DNA sample is from a particular person "beyond a reasonable doubt," the probability has to be one in more than 200 billion.

support the verdict.  It was for the jury to consider the testimony and credibility of the witnesses and to reconcile any evidentiary conflicts.  *See Johnson*, 23 S.W.3d at 7; *Barnes*, 62 S.W.3d at 298.  We overrule appellant's issues on appeal and affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   August 26, 2004

Do Not Publish