# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00363-CR

**Mario Delossantos, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT NO. A-02-0438-S, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Mario Delossantos was charged with possession with intent to deliver more than four but less than two hundred grams of methamphetamine and with assaulting a public servant. He pleaded not guilty and waived his right to a jury trial. The trial court convicted him of both counts, sentencing him to twenty years' imprisonment for the drug charge and seven years' for the assault. On appeal, appellant asserts four issues, arguing that the evidence is legally and factually insufficient to support his conviction for drug possession, that the trial court improperly took judicial notice of certain facts, and that he received ineffective assistance of counsel. We affirm the judgments of conviction.

## Summary of the Evidence

Clinton Scitern, a former officer with the Tom Green Sheriff's Department, testified that on March 8, 2002, he was on duty in a marked police car when he saw a car driven by appellant run a red light. Scitern followed and pulled the car over. Appellant got out of his car and Scitern approached to get appellant's driver's license. As Scitern talked to appellant, Buffy Jo Walker approached from her house, in front of which appellant had parked. Scitern recognized Walker and told her to go back to the house. Scitern returned to his car and called for a canine unit because he recognized appellant and had "received information a couple months prior to this that he was selling narcotics out of his vehicle." When he learned there was no canine unit available, Scitern decided to arrest appellant for the traffic violation because of appellant's "extensive traffic record." Scitern told appellant that he was under arrest for the traffic violation, but as Scitern reached for him, appellant broke away and ran. Scitern chased appellant and caught up to him in the yard next to Walker's house. Appellant refused to stop struggling, so Scitern sprayed him twice with pepper spray. After being sprayed the first time, appellant reached into his pockets and started throwing out "black golf ball size objects" into the yard; the black balls were later found to be methamphetamine wrapped in black electrical tape. Appellant yelled for Walker to come pick up the balls, but Scitern advised her that she would be arrested if she interfered, and another man restrained Walker from assisting appellant. As Scitern wrestled with appellant, several city employees approached and asked if they could help. Scitern asked one of them to sit on appellant's legs, and Scitern was then able to handcuff appellant. During the struggle, appellant bit Scitern, drawing blood, and Scitern's thumb was injured.

2

On cross-examination, appellant's counsel asked Scitern about his earlier testimony in a hearing on appellant's motion to suppress in which Scitern stated he knew appellant was having an affair with Scitern's ex-wife. The record shows that when Scitern stopped appellant on March 8, he asked appellant, "You know my wife real well, don't you?" Scitern testified that he did not usually arrest people for running a red light, but for "a driving record like that, yes." Scitern denied that he arrested appellant so that he could search him, although he admitted that he called for a canine unit, had information that appellant might have drugs, and knew appellant would be searched attendant to his arrest. Scitern also said he did not keep his eyes on the balls thrown by appellant but did focus on where they landed because he was concerned that they could be weapons. Scitern testified that Walker is extensively involved with drugs. On cross-examination, Scitern stated he did not know whether the items were in the yard before the struggle.

Sergeant Eddie Noriega with the Tom Green Sheriff's Department testified that he arrived on the scene after Scitern had handcuffed appellant. Scitern told Noriega that appellant had thrown some things in the driveway and yard and asked Noriega to photograph those items. Noriega testified that black electrical tape found in appellant's truck was consistent with the tape wrapped around the drugs. Each of the taped balls contained almost an ounce of drugs. Amy Copeland testified that she knew Scitern through his ex-wife, Serena. About two months before appellant's arrest, Copeland stayed at Serena's apartment to babysit while Serena went out, using Copeland's car. Scitern called several times looking for Serena, and the last time saying he had found her car in a parking lot and wanted to know why it was there. Scitern then asked if Serena was "up there

3

with Mario," referring to appellant. Copeland testified that Serena was a drug user and that appellant had a reputation for dealing drugs.

## Sufficiency of the Evidence

Appellant challenges only the evidence supporting a finding that he was in possession of the drugs. He does not attack the court's finding of an intent to deliver.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Howard v. State*, 972 S.W.2d 121, 124 (Tex. App.—Austin 1998, no pet.). In reviewing factual sufficiency, we view all of the evidence in a neutral light, comparing the evidence supporting a disputed fact with evidence tending to disprove that fact. *Johnson*, 23 S.W.3d at 7; *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We will set aside a verdict for factual insufficiency only if the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the verdict. *Johnson*, 23 S.W.3d at 11. We will overturn a fact-finder's determination only if the record indicates manifest injustice; otherwise, we will accord due deference to the determinations of fact, particularly those of the evidence's weight and credibility. *Id.* at 8-9; *Jones*, 944 S.W.2d at 648.

"The State may prove its case by circumstantial evidence if it proves all of the elements of the charged offense beyond a reasonable doubt." *Barnes v. State*, 62 S.W.3d 288, 297

(Tex. App.—Austin 2001, pet. ref'd) (citing *Easley v. State*, 986 S.W.2d 264, 271 (Tex. App.—San Antonio 1998, no pet.)). We determine the sufficiency of the evidence based on the cumulative effect of all of the evidence, not each fact in isolation. *Id.* The fact-finder may accept or reject all or any of the evidence presented by either side, may draw reasonable inferences from the evidence, and must decide how to reconcile any evidentiary conflicts. *Id*. at 298. We apply the same standards to direct and circumstantial evidence. *Id.* at 297.

To convict a defendant of drug possession, the State must prove (i) that the defendant exercised care, custody, control, or management over the drugs, and (ii) that he knew he possessed a controlled substance. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Martinets v. State*, 884 S.W.2d 185, 187 (Tex. App.—Austin 1994, no pet.). When the defendant is not in exclusive possession or control of the place where the drugs are found, the State must affirmatively link the defendant with the drugs. *Brown*, 911 S.W.2d at 747-48; *Martinets*, 884 S.W.2d at 187. The affirmative links need not be so strong as to exclude every other reasonable alternative hypothesis except the defendant's guilt. *Brown*, 911 S.W.2d at 748. Some possible affirmative links are whether: the drugs were in plain view; the defendant owned or had a right to possess the place where the drugs were found; the drugs were easily accessible to the defendant; other drugs or drug paraphernalia were found; or the defendant made furtive gestures or incriminating statements. *See Bryant v. State*, 982 S.W.2d 46, 49 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd).

Appellant asserts that the evidence is legally and factually insufficient to support his conviction for drug possession, arguing the evidence does not show that he had possession of the

drugs found by the police. Appellant notes that Scitern: did not testify that each ball of drugs admitted into evidence was an item he saw appellant throw; did not testify that the items introduced into evidence appeared to be the same as the items he saw appellant throw; did not gather the evidence at the scene; did not point specific items out to the officer who collected the evidence; and testified that he did not know if some of the balls of drugs might have been in the yard before his struggle with appellant. Thus, appellant argues, the evidence provides insufficient affirmative links between appellant and the drugs found in the yard. We disagree.

Appellant broke away and tried to escape when Scitern told appellant he was under arrest; Scitern saw appellant throwing "black golf ball size objects" out of his pockets; at least one ball of drugs was found near appellant's truck; several balls of drugs were found in the yard immediately after the struggle; the drugs were wrapped in tape similar to that found in appellant's truck; and appellant asked Walker to help him by picking up the balls he was throwing. The evidence, viewed in the light most favorable to the verdict, is legally sufficient to affirmatively link appellant to the drugs. *Johnson*, 23 S.W.3d at 7. Even when all the evidence is viewed neutrally, appellant's suspicious behavior, seeking help from a friend, and throwing black golf-ball sized objects from his pockets when he knew he was about to be arrested support an inference that appellant knew he possessed illegal drugs. Scitern described the objects he saw appellant throw, and the drugs found in the yard after the struggle match that description precisely. The State was not obligated to disprove appellant's alternative hypothesis that some of the balls of drugs might have been in the yard before appellant arrived. *See Brown*, 911 S.W.2d at 747-48. Not only is it unlikely

6

that a person in possession of drugs would leave them lying in a yard, the trial court could reasonably have decided that it was unlikely to be simple coincidence that the objects Scitern saw appellant throw appeared the same as the packaging used for the drugs. We hold the evidence is legally and factually sufficient to support the trial court's finding that appellant possessed the drugs found in the yard after his struggle with Scitern. We overrule appellant's first two issues.

### Judicial Notice

In his third issue, appellant complains of the trial court's taking judicial notice of Walker's "previous history with this court." That statement was made at the conclusion of State's case in chief. Appellant re-urged his motion to suppress, arguing that Scitern had not been honest in his testimony and that the State had not established sufficient affirmative links between appellant and the drugs found in the yard. Appellant asserted that Walker is a drug user, implying that the drugs might have belonged to her. The court opined that it was unlikely that Walker had left the drugs in the yard. Appellant's counsel objected to the court's comment, and the court then stated that it would "take notice of Buffy Joe [sic] Walker's previous history with this Court." Appellant did not object to the court's taking notice of Walker's criminal background, and instead pressed his argument that the drugs were not sufficiently tied to appellant.

Initially, we hold that by failing to object in any way to the court's taking notice of Walker's record, appellant waived any error that may have occurred. *See* Tex. R. App. P. 33.1 (to preserve complaint, appellant must show timely and sufficiently specific objection was made before trial court and that trial court overruled or refused to rule on objection). Furthermore, Scitern testified that Walker had a history of extensive drug involvement, and thus in essence, the improper

7

evidence of which appellant complains was already in the record through proper testimony. It was appellant himself who emphasized the fact that Walker had a record of drug involvement in an effort to support his argument that the drugs might have belonged to Walker. Thus, if anything, the trial court acted in accordance with appellant's wishes in acknowledging Walker's drug use. Finally, assuming preserved error, appellant has shown no harm in the trial court's action. *See* Tex. R. App. P. 44.2(b). If anything, Walker's drug involvement would have bolstered appellant's proffered alternative hypothesis. We overrule appellant's third issue on appeal.

### Ineffective Assistance of Counsel

To show ineffective assistance of counsel, a defendant must show that counsel's performance both fell below an objective standard of reasonableness and prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). The defendant bears the burden of (1) overcoming a strong presumption that counsel's performance fell within the range of reasonable professional assistance and (2) bringing forth a record showing that counsel's performance was not based on sound trial strategy. *Thompson*, 9 S.W.3d at 813; *Blevins*, 18 S.W.3d at 271. When the record is silent as to possible trial strategies, we will not speculate as to why counsel acted in a particular way. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.). If there is no evidentiary hearing on the issue of effectiveness, the defendant's burden is difficult to meet, and rarely will we find counsel was ineffective. *Blevins*, 18 S.W.3d at 271-72 (quoting *Thompson*, 9

8

S.W.3d at 813); *see Mayhue*, 969 S.W.2d at 511. We evaluate trial counsel's effectiveness from his perspective at trial, not in hindsight, and we consider the representation in its totality, rather than focusing solely on isolated acts or omissions. *Mayhue*, 969 S.W.2d at 510.

Appellant argues that his counsel failed to delve sufficiently into Scitern's bias arising out of appellant's involvement with Scitern's ex-wife. He also attacks counsel's failure to ask further questions that could have shown that Scitern had not been entirely truthful in his testimony, counsel's failure to object to the State's asking whether appellant had a reputation for dealing drugs, and several other alleged failures to object or properly cross-examine the witnesses. There was no hearing on appellant's motion for new trial, nor did the motion even allege ineffective assistance.

Counsel attempted to impeach Scitern's testimony on several occasions, including attacking Scitern's trial testimony as being inconsistent with his earlier testimony at a hearing. Counsel questioned Copeland, eliciting evidence that Scitern was unhappy with his ex-wife's involvement with appellant and thus raising the specter of bias against Scitern. We note that Scitern testified that he had information that appellant had been dealing drugs out of his car, and therefore Copeland's testimony about appellant's reputation was cumulative. In this case, the undeveloped record cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003); *Blevins*, 18 S.W.3d at 271-72. We will not second-guess or speculate as to counsel's reasoning and trial strategy. *See Mayhue*, 969 S.W.2d at 511. Viewed as a whole, appellant's counsel provided effective counsel and raised the issues of Scitern's bias and possibly false testimony. We overrule appellant's fourth issue.

## Conclusion

We have overruled appellant's issues on appeal. We therefore affirm the trial court's judgments of conviction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   January 27, 2005

Do Not Publish