**Darwin L. BROWN, Appellant.**

v.

**The STATE of Texas, Appellee.**

**No. 13–96–208–CR.**

Court of Appeals of Texas, Corpus Christi.

Dec. 4, 1997.

---

Thomas H. Morris, III, La Vernia, for appellant.

W.C. Kirkendall, Dist. Atty., Frank Follis, Asst. Dist. Atty., Seguin, for appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

Darwin Louis Brown appeals his conviction for aggravated sexual assault. The jury assessed punishment at twenty-five years in prison and a $10,000 fine. Brown raises three points of error, complaining of (1) failure to instruct on a lesser included offense, (2) the State's use of its peremptory challenges, and (3) admission of his statement into evidence. We affirm.

The victim testified that in the early morning hours of October 12, 1994, she awoke to some "rustling" sounds in her apartment, followed by the sight of a man coming toward her in bed. She began to scream, and appellant "fell" on top of her and placed his hand over her mouth. The victim heard a click that sounded similar to the opening of a knife. After some struggling, appellant shoved a pillowcase in her mouth and proceeded to rape her. At some point, he told the victim that if she remained still, she wouldn't get hurt. She remained still.

In his first point of error, appellant argues that the trial court erred in denying a request for a jury instruction on the lesser included offense of sexual assault. We follow a two-prong test to determine whether a criminal defendant is entitled to a jury instruction on a lesser included offense. Such an instruction is appropriate (1) when the lesser included offense is within the proof necessary to establish the offense charged and (2) when some evidence exists in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App. 1994); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981). That is, when conflicting evidence arises regarding the element of the aggravating circumstance which distinguishes the greater offense from the lesser, the charge should be given. *Royster*, 622 S.W.2d at 444.

The instant case meets the first prong. All the elements of sexual assault are present in the greater offense of aggravated sexual assault, thus making sexual assault a lesser

included offense of aggravated sexual assault. Tex.Penal Code Ann. §§ 22.011 (sexual assault), 22.021 (aggravated sexual assault) (Vernon 1994 & Supp.1996); *see Chavis v. State*, 807 S.W.2d 375, 377 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Perryman v. State*, 798 S.W.2d 326, 332 (Tex.App.—Dallas 1990, no pet.); *McGahey v. State*, 744 S.W.2d 695, 696 (Tex.App.—Fort Worth 1988, pet. ref'd). Sexual assault is elevated to aggravated sexual assault if one of a specified list of aggravating circumstances are also proven. In the present case, the aggravating element that the State alleged and proved to the jury was that, in the commission of the sexual assault, Brown by his acts or words placed the victim in fear that death or serious bodily injury would be imminently inflicted on her. *See* Tex.Penal Code Ann. § 22.021(a)(2)(A)(ii) (Vernon 1994).

Under the second prong of the test, Brown was entitled to a charge on the lesser offense if there was any evidence to suggest that he is guilty only of sexual assault, i.e., that he did not place the victim in fear of imminent death or serious bodily injury when he sexually assaulted her.

■■■ We require only a minimal showing that the defendant may only be guilty of the lesser offense. Anything more than a scintilla of evidence from any source is sufficient to entitle a defendant to a charge on the lesser offense. *Schweinle v. State*, 915 S.W.2d 17, 18 (Tex.Crim.App.1996); *Bignall*, 887 S.W.2d at 23. Therefore, any evidence that the victim did not possess the requisite fear of death or serious bodily injury necessitates a charge on the lesser offense. *Carter v. State*, 713 S.W.2d 442, 448 (Tex.App.—Fort Worth 1986, pet. ref'd). However, a charge on the lesser offense is inappropriate when the evidence shows that the defendant is either guilty of the greater offense or completely innocent. *See Bravo v. State*, 627 S.W.2d 152, 157 (Tex.Crim.App.1982); *Thomas v. State*, 578 S.W.2d 691, 698 (Tex.Crim.App. 1979); *McBrayer v. State*, 504 S.W.2d 445, 447 (Tex.Crim.App.1974); *Torres v. State*, 493 S.W.2d 874, 875 (Tex.Crim.App.1973).

In the context of an aggravated sexual assault, the victim's state of fear is normally established through his or her own testimony. The defendant's conduct is then examined to determine whether it was the producing cause of such fear and whether the subjective state of fear was reasonable in light of such conduct. *Perryman*, 798 S.W.2d at 332; *Foreman v. State*, 743 S.W.2d 731, 732 (Tex.App.—El Paso 1987, no pet.). Where the objective facts of the assault would naturally cause the victim fear for life or serious bodily injury, as where a deadly weapon, explicit threats, or excessive force or violence are used, it is reasonable to assume that the victim had the requisite level of fear in the absence of some specific evidence to the contrary. *See Carter*, 713 S.W.2d at 445 (the victim was gagged, tied up and thrown to the floor in the course of the sexual assault).

In the present case, the victim testified that, during the course of the sexual assault, she heard a clicking sound which she interpreted to be a knife opening. When asked about her fear, the victim testified as follows:

Q. Were you afraid at that time?

A. Yes, sir.

Q. Were you in fear of your life at that time?

A. Well, let me put it this way. He told me if I layed [sic] still, I wouldn't get hurt. I stayed still.

Q. Were you scared?

A. Yes, I was scared.

Q. Having heard what you thought was a knife before, were you in fear for your life?

A. Yes. Yes, sir.

■■■ The victim's fear of death or serious bodily injury was thus substantiated by her belief that a knife was being used against her. Moreover, as applied in aggravated sexual assault cases under section 21.021(a)(2), the fear of "imminent" death or serious bodily injury does not refer to the conditional or unconditional nature of the threat, so long as the threat is of present injury or death, rather than of some future consequence.[1] *See Foreman*, 743 S.W.2d at

---

1. The term "imminent," as it relates to threats of

bodily injury or death in various sections of the

733. In other words, it does not diminish the "imminent" nature of the threat that the victim has been told that he or she will not be hurt if they comply with their attacker's requests. *See Dalton v. State*, 898 S.W.2d 424, 429 (Tex.App.—Fort Worth 1995, pet. ref'd); *Selvog v. State*, 895 S.W.2d 879, 882 (Tex.App.—Texarkana 1995, pet. ref'd); *Wilkerson v. State*, 766 S.W.2d 795, 798 (Tex. App.—Tyler 1987, pet. ref'd); *Douglas v. State*, 740 S.W.2d 890, 892 (Tex.App.—El Paso 1987, no pet.); *Fox v. State*, 693 S.W.2d 593, 598 (Tex.App.—San Antonio 1985, no pet.).

■ Accordingly, in the present case, in the absence of any evidence to show that the victim did not have the requisite degree of fear for her life, Brown is not entitled to a charge on the lesser offense. We overrule the first point of error.

Brown complains by his second point of error that the trial court should have sustained his *Batson* challenge to the State's use of peremptory strikes on the basis of race.

Using peremptory strikes to exclude veniremen of a certain race from jury service violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In order to show *Batson* error, the defendant must make a prima facie showing that the state exercised its peremptory challenges on the basis of race. The burden then shifts to the State to articulate a race-neutral explanation for the challenges in question. If the State offers such an explanation, the defendant must in turn rebut that explanation. Finally, the trial court must determine whether the defendant has carried his burden of rebutting the State's explanation and proving purposeful racial discrimination by the State. *Chambers v. State*, 866 S.W.2d 9, 23 (Tex.Crim.App.1993); *Lopez v. State*, 940 S.W.2d 388, 389 (Tex.App.—Austin 1997, no pet.).

■ On appeal, a *Batson* challenge is subject to a "clear error" standard of review. *Chambers*, 866 S.W.2d at 23; *Lopez*, 940 S.W.2d at 390. In applying this standard, we review all of the evidence in the light most favorable to the trial court's ruling to decide whether the ruling was clearly erroneous. *Lopez*, 940 S.W.2d at 390. The trial court's determination represents a finding of fact to which we must accord great deference. *Chambers*, 866 S.W.2d at 23.

■ In the present case, Brown, who is Black, complains that the State used six of its ten peremptory strikes against Black and Hispanic veniremen. When the State was called upon to present a race-neutral explanation for their exclusion, the prosecutor stated that he had excluded them because they were all under the age of 30, and that he believed older jurors would be more favorable to the State. The prosecutor consistently used his peremptory strikes to challenge veniremen under thirty, and none of the jurors eventually chosen were under thirty.

Age is an accepted criterion for peremptory challenges and does not violate *Batson*. *See Silva v. State*, 800 S.W.2d 912, 914–15 (Tex.App.—San Antonio 1990, no pet.); *Moss v. State*, 790 S.W.2d 731, 732 (Tex.App.—Houston [14th Dist.] 1990, no pet.). Accordingly, we uphold the trial court's determination that the State's challenges were legitimate and race-neutral. Brown's second point of error is overruled.

By his third and final point of error, Brown complains that the trial court improperly admitted his written statement into evidence, even though it did not comply with the requirements of the Texas Code of Criminal Procedure regarding statements made during custodial interrogation. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979 & Supp.1997).

When he was first approached by a law enforcement officer shortly after 5:00 a.m. on the morning of the rape, Brown told the

---

penal code, is interpreted to mean that such injury or death is "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Devine v. State*, 786 S.W.2d 268, 270 (Tex.Crim.App.1989) (rob-

bery statute). It refers to a present, not a future, threat of bodily injury or death. *Id.; Garcia v. State*, 819 S.W.2d 634, 636 (Tex.App.—Corpus Christi 1991, no pet.).

officer that he had been home for the past two or three hours. Later, Brown gave a statement to the Gonzales County Sheriff retracing his steps on the night of the offense and claiming that he had been in bed asleep at the time he allegedly raped the victim some two hours before he was first approached by the police. However, two witnesses who lived with Brown at the time of the rape contradicted his claim that he was at home at that time. Accordingly, Brown moved to suppress this statement on the grounds that he was in custody at the time, and that the statement was taken without Brown's knowing waiver of his right to counsel in violation of article 38.22.

At the suppression hearing, the State presented the testimony of several law enforcement officers, including Nixon Police Officer Richard Moreno and Gonzales County Sheriff's Deputy Floyd Toliver, both of whom were involved in the initial investigation of the rape. According to their testimony, a woman living near the victim saw appellant shortly before the rape just outside the victim's residence. Officer Moreno went to Brown's residence on the morning after the offense, found him there and asked if he would mind answering a few questions. Moreno testified that Brown voluntarily agreed to answer his questions and voluntarily accompanied him in a patrol car to the scene of the crime, to the police department for fingerprints and photographs, back to Brown's residence for questioning of other witnesses, and back to the scene of the crime. Deputy Toliver then took Brown to the sheriff's office where he gave the statement in question to Gonzales County Sheriff Donald Brzozowski. All of the State's witnesses testified that Brown was not restrained or placed under arrest and that he voluntarily agreed to all procedures used to obtain his statement. ·

Brown testified at the hearing that he initially agreed to accompany Moreno to the scene of the crime and then to the police department and back to his residence, but that he was not subsequently asked if he

wanted to be taken back to the scene of the crime or to the sheriff's department for questioning. Brown generally testified that, after he was returned the second time to the scene of the crime, he did not feel free to leave. Once at the sheriff's department, the sheriff asked Brown to give a blood sample. When Brown asserted his right not to, the sheriff threatened to "take you in the back and get all the damn blood we need." Brown then asked if he needed a lawyer, and the sheriff told him that he did not. Brown testified that, as a result of the sheriff's conduct, he did not feel free to leave the sheriff's office at the time he gave his statement to the sheriff.

After the hearing, the trial court signed an order denying the motion to suppress without specifying its conclusions or findings. The State then offered Brown's statement into evidence at trial, along with the contradictory testimony of the two witnesses who denied that Brown was at home at the time he claimed to have been.

Under the Federal Constitution, evidence obtained as a result of a custodial interrogation is inadmissible unless the State can prove that proper warnings were given and show an affirmative waiver of rights. *Miranda v. Arizona*, 384 U.S. 436, 443–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *Ancira v. State*, 516 S.W.2d 924, 926 (Tex.Crim. App.1974); *Appling v. State*, 904 S.W.2d 912, 917 (Tex.App.—Corpus Christi 1995, pet. ref'd). In addition, Texas law specifically requires, for admission into evidence, that these *Miranda* warnings be contained on the face of any written statement[2] made by the defendant during custodial interrogation. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 2(a) (Vernon 1979); *Penry v. State*, 691 S.W.2d 636, 643–44 (Tex.Crim.App.1985); *Campbell v. State*, 885 S.W.2d 528, 529 (Tex.App.—El Paso 1994, no pet.); *Vaughn v. State*, 833 S.W.2d 180, 183 (Tex.App.—Dallas 1992, pet. ref'd); *Pena v. State*, 832 S.W.2d 697, 699 (Tex.App.—Corpus Christi 1992, pet. ref'd).

 Custodial interrogation is defined as questioning initiated by law enforcement officers after a person has been taken into

---

**2.** Article 38.22 draws no distinction between exculpatory and inculpatory statements (e.g., confessions), but applies to all statements which may be used in some way by the State to incriminate the defendant. *Harrison v. State*, 556 S.W.2d 811, 813 (Tex.Crim.App.1977).

custody or is otherwise deprived of his freedom of action in any significant way. *Miranda,* 384 U.S. at 443–45, 86 S.Ct. at 1612; *White v. State,* 931 S.W.2d 736, 740–43 (Tex. App.—Corpus Christi 1996, pet. ref'd); *Burns v. State,* 807 S.W.2d 878, 882 (Tex. App.—Corpus Christi 1991, pet. ref'd). Interrogation is custodial if under the circumstances a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane,* 516 U.S. 99, ——, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995); *White,* 931 S.W.2d at 740–43.

■■■■■ At a suppression hearing, the trial court is the trier of fact and the exclusive judge of the witnesses' credibility and the weight to be given their testimony. *Nance v. State,* 807 S.W.2d 855, 866 (Tex.App.—Corpus Christi 1991, pet. ref'd). However, following the suppression hearing, and regardless of whether the defendant objects, article 38.22 requires the trial court to file findings of fact and conclusions of law as to whether the statement was voluntarily made. TEX. CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 1979). Moreover, the trial court reversibly errs by failing to make such findings and conclusions, and, if not properly made, the appellate court should abate the proceeding to the trial court so that such findings and conclusions can be properly entered. *Green v. State,* 906 S.W.2d 937 (Tex.Crim.App. 1995); *Muhammad v. State,* 911 S.W.2d 823, 825 (Tex.App.—Texarkana 1995, no pet.).

In the present case, the evidence presented at the suppression hearing placed the matter within the trial court's discretion to determine whether Brown was in custody at the time his statement was taken. If in custody, Brown's statement should have been suppressed as a violation of article 38.22, § 2's requirement for written warnings. The trial court clearly erred by failing to make the findings required by article 38.22, § 6. Nevertheless, even if Brown was in custody at the time, we conclude beyond a reasonable doubt that the wrongful admission of his statement was harmless. Accordingly, we need not remand for findings and conclusions.

■■■■ Under new Texas Rule of Appellate Procedure 44.2, our first task in deciding whether error in a criminal case is harmless is to determine whether such error is "constitutional." Tex.R.App.P. 44.2(a). In the present case, although the specific protections of article 38.22 requiring written warnings and findings by the trial court concerning the voluntary nature of the statement are statutory, they are meant to implement the broader constitutional protection against involuntary or coerced confessions and are thus of "constitutional dimension." *See Arizona v. Fulminante,* 499 U.S. 279, 306–313, 111 S.Ct. 1246, 1263–66, 113 L.Ed.2d 302 (1991); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Dowthitt v. State,* 931 S.W.2d 244, 263 (Tex.Crim.App. 1996); *Sterling v. State,* 800 S.W.2d 513, 520 (Tex.Crim.App.1990).[3] The procedure established by 38.22 for determining that a written statement was voluntarily made, including the requirement of court findings to that effect, is so intimately tied to the ultimate constitutional question of whether in fact the statement was voluntary, that the statutory requirement cannot be separated for purposes of applying a less exacting harmless error test. Accordingly, we apply the harmless error test of rule 44.2(a), rather than the new, more lenient test of Rule 44.2(b). Nevertheless, even under the test of 44.2(a), we conclude that the error in the present case was harmless.

■■■■ Under the harmless error test of rule 44.2(a) and federal authorities, improperly admitted evidence does not call for reversal if the reviewing court determines beyond a reasonable doubt that admission of the evidence did not contribute to the conviction or punishment. *See Chapman,* 386 U.S. at 21–25, 87 S.Ct. at 827–28; *cf. Hicks v. State,* 860 S.W.2d 419, 430 (Tex.Crim.App.

---

**3.** In the past, the courts of this State have not been overly concerned about distinguishing constitutional from trial error, because the same basic test of harmless error was generally applied to both under former rule 81(b)(2). However, under new rule 44.2 the distinction between constitutional error and errors in state statutory or procedural law is now crucial in determining which "harmless error" test to apply.

1993); *Harris v. State,* 790 S.W.2d 568 (Tex. Crim.App.1989) (prior harmless error standard in Texas).

In the present case, Brown did not testify at the guilt/innocence phase of the trial. Lacking any direct observation by the victim or any other witness, the prosecution relied on circumstantial evidence to prove that Brown was the man who had committed the rape. It introduced DNA evidence gathered from the scene of the crime and from Brown's person which placed Brown within the 1 out of 400,000,000 to 800,000,000 fraction of the population that could have committed the crime. The State also stressed that Brown knew the victim, had been in her apartment once before to help her move some furniture, and that witnesses placed him just outside the apartment earlier in the morning before the rape occurred.

The only additional weight that Brown's contradictory statement may have given to the prosecution's case was to show that Brown lied concerning his whereabouts at the time of the rape and therefore must have been attempting to cover up his commission of the crime. However, Officer Moreno testified at trial, without objection, that Brown told him the same story—that he had been at home for the past two or three hours—when Moreno first approached Brown at his residence. Brown has made no claim that he was in custody at that point in time. Therefore, his later written statement is merely cumulative of what he had already told the authorities when he was first approached. We conclude that the written statement added nothing new to the State's case against Brown but additional details having little incriminating value. Accordingly, we conclude beyond a reasonable doubt that the admission of the statement into evidence, even if error, did not contribute to Brown's conviction or punishment and was, therefore, harmless. We overrule Brown's third point of error.

The judgment of the trial court is AFFIRMED.