William Weldon NEAGLE, Appellant,

v.

The STATE of Texas, State.

No. 2–01–128–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 14, 2002.

Robert Kersey, Granbury, for appellant.

R. Kelton Conner, County Attorney & J. David Tucker, Asst. Cty. Atty., Granbury, for appellee.

PANEL A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

### OPINION

JOHN CAYCE, Chief Justice.

William Neagle appeals his conviction and six-month sentence for making a ter-

roristic threat. In two points on appeal, appellant complains that the evidence is not legally and factually sufficient to support the "imminent" character of the alleged threat. We will affirm.

Appellant owned property in the Rolling Hills Shores subdivision in Hood County. In early 1999, the Rolling Hills homeowners' association filed suit against appellant for violating the deed restrictions on his property. On February 13, 1999, appellant attended the monthly meeting of the homeowners' association and expressed anger at the association's legal action against him. Although attendees attempted to explain their actions to appellant, his anger intensified. Appellant then referred to a murder/suicide that had occurred in the subdivision approximately one year earlier stating that if the suit continued against him, "he would make Martin look like a Sunday school teacher." As a result, appellant was arrested and charged with making a terroristic threat. After a trial, the jury found appellant guilty.

Appellant filed a motion for directed verdict alleging that any threat he posed was not "imminent." The trial court denied his motion and sentenced him to six months in the county jail. Appellant then filed a motion for new trial alleging the same grounds; however, this motion was also denied.

■ In two points, appellant challenges the legal and factual sufficiency of the evidence to support the jury's verdict. Specifically, he argues that because his comments to the homeowners' association constituted only conditional threats of future violence, the evidence is insufficient to prove beyond a reasonable doubt that he intended to place them in fear of imminent serious bodily injury. Appellant contends that he conditioned his future actions on the taking of his home as a result of

litigation prosecuted by the homeowners' association, or at least on the continued prosecution of such litigation.

■ In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict. *Cardenas v. State,* 30 S.W.3d 384, 389–90 (Tex.Crim. App.2000); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson,* 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly out-

weighed by contrary proof. *Id.* In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis,* 922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Johnson,* 23 S.W.3d at 9, 12; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

A person makes a terroristic threat if he threatens to commit any offense involving violence to any person or property with the intent to place any person in fear of imminent serious bodily injury. Tex. Penal Code Ann. § 22.07(a)(2) (Vernon 1994). Imminent means "[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous." Black's Law Dictionary 750 (6th ed.1990). In *In re A.C.,* we rejected arguments virtually identical to the ones appellant raises in this case. 48 S.W.3d 899, 904 (Tex. App.-Fort Worth 2001, pet. denied). In *A.C.,* we held that

> [c]onditioning a threat of harm on the occurrence or nonoccurrence of a future event does not necessarily mean that the harmful consequences threatened are not imminent. Rather, the focus of the inquiry should be whether the complainant was afraid of imminent serious bodily injury at the time of the offense.

*Id.*

Here, eight witnesses testified about the effect appellant's words had on them. Many were afraid that appellant would commit acts similar to those committed by Don Martin. One board member stated that she understood his statements to be a threat on her life and believed that his actions would come relatively soon. Another testified that appellant's remarks terrified her to the point of causing her to

stop sleeping in her front bedroom. Yet another board member testified that he believed the appellant would actually shoot him relatively soon. Other members resigned their board positions or discontinued attending meetings after this incident for fear that appellant might carry out his threats.

We conclude that the evidence is both legally and factually sufficient to establish the "imminent" element of the offense. It is clear from the record that the reference to the Martin murder/suicide, a horrific event well known to the community, was calculated to cause the attendees to immediately fear appellant due to the imminent possibility that he would react violently to their pursuit of the litigation. Appellant's threat, in the minds of the victims, was real, near at hand, and highly threatening. The jury could infer from appellant's acts, words, and conduct that he intended to place the board members in fear of imminent serious bodily injury. We overrule appellant's points and affirm the trial court's judgment.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

Because the majority misconstrues the offense of terroristic threat, and because the majority opinion conflicts with well-established authority, I must respectfully dissent.

A person commits the offense of terroristic threat if he threatens to commit any offense involving violence to any person or property with intent to place any person in fear of imminent serious bodily injury.[1] The term "imminent" relates to the threat

---

1. Tex. Penal Code Ann. § 22.07 (Vernon 1994).

of bodily injury.[2] The majority, however, applies the term "imminent" to the fear. The majority holds that the evidence is sufficient because Appellant's reference to the Martin murder/suicide "was calculated to cause the attendees to immediately fear appellant" even though any threatened violence was both contingent and future.

The term "imminent," as used in various sections of the penal code, has been interpreted to mean that injury or death is "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near."[3] It refers to a present, not a future, threat of harm.[4] In other words, the threat must be of present injury, rather than of some future consequence.[5] A threat conditioned on a future occurrence is not a threat of imminent infliction of serious bodily injury. One must look at the proximity of the threatened harm to the condition.[6]

The majority also emphasizes the effects of Appellant's words on mere witnesses. In the case now before us, Appellant told the board members that if they ever came to his property again, he would shoot them. But the State did not allege that this threat of shooting constituted a terroristic threat. Instead, the misdemeanor information charged that Appellant

did then and there intentionally threaten to commit an offense involving violence to LEE CARROLL DARDEN; namely, STATED "IF THE SUIT CONTINUED AGAINST HIM, HE WOULD MAKE MARTIN LOOK LIKE A SUN-

DAY SCHOOL TEACHER", with intent to place LEE CARROLL DARDEN, in fear of imminent serious bodily injury.

The majority points out that eight witnesses testified about the effect Appellant's words had on them. Respectfully, the State was required to show a threat of imminent serious bodily injury to Lee Carroll Darden, the person named in the indictment. The reaction of eight other witnesses to Appellant's words does not establish the gravamen of the offense. Yet the majority refers to all these unnamed witnesses as "victims" and holds that "Appellant's threat, in the minds of the victims, was near at hand, and highly threatening."

At trial, the prosecutor asked, "Mr. Darden, did you hear Mr. Neagle threaten that he would make Don Martin look like a Sunday School Teacher?" Darden replied that he had. The record shows that after Appellant made the Martin remark, Darden and Appellant got into a shoving match. Darden admitted that he had used profanity toward Appellant. Darden described the profanity as "You mother-something, to that effect." When asked whether he thought that Appellant "would actually—shoot [him] relatively soon," Darden replied, "At that point I did." "Relatively soon" is not "menacingly near."[7]

I would hold that the evidence is neither legally nor factually sufficient to support the trial court's judgment. Because the

2. *Id.*

3. *Brown v. State,* 960 S.W.2d 265, 268 n. 1 (Tex.App.-Corpus Christi 1997, no pet.) (citing *Devine v. State,* 786 S.W.2d 268, 270 (Tex. Crim.App.1989)).

4. *Anguish v. State,* 991 S.W.2d 883, 886 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd); *Brown,* 960 S.W.2d at 268 n. 1; *Kessler v.*

*State,* 850 S.W.2d 217, 222 (Tex.App.-Fort Worth 1993, no pet.).

5. *Brown,* 960 S.W.2d at 268.

6. *Green v. State,* 567 S.W.2d 211, 213 (Tex. Crim.App.1978).

7. *Brown,* 960 S.W.2d at 268 n. 1.

majority opinion misapplies the controlling law and conflicts with well-established authority to reach the opposite conclusion, I must respectfully dissent.