NUMBER 13-02-367-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG




ROBERT GRAY,                                                                Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.




On appeal from the 347th District Court 
of Nueces County, Texas.




O P I N I O N

Before Chief Justice Valdez and Justices Rodriguez and Baird



Opinion by Justice Baird

         Appellant was charged in a four count indictment with the offenses of
intoxication manslaughter and aggravated assault. The indictment alleged two prior
convictions for the purpose of enhancing the range of punishment. A jury convicted
appellant of each offense. However, the State elected to proceed only on counts I and
IV at the punishment phase. The jury found the enhancement allegations true and
assessed punishment on each count at fifty years in the Texas Department of Criminal
Justice–Institutional Division. We sustain the first point of error and reverse the
judgment of the trial court.
I. Factual Summary. 
         The first point of error contends the trial judge erred in excusing a
veniremember, over appellant’s objection, due to financial hardship. The facts giving
rise to this point of error are not in dispute. On the morning trial began, the venire was
seated, the trial judge called for announcements, and both sides announced ready for
trial. The trial judge greeted the venire and made some preparatory remarks. At the
conclusion of his remarks, the trial judge excused the bulk of the venire for lunch and
asked those who wanted to “plead economic excuses” to remain. At this point, the
second veniremember approached the bench and the following exchange occurred: 
THE COURT: This is Juror Number 2. All right, sir. Would you tell us
what your situation is.
 
VENIREMEMBER: It is going to make a burden for me because my family
because we count on my paycheck every week. It’s going to cost me
$100 a day. If I stay here, I won’t get paid.
 
THE COURT: You work -- where do you work, sir?
 
VENIREMEMBER: Ford dealer, Eddie Yaklin, Kingsville, auto part sales
and commission.
 
THE COURT: Who is dependent on your income?
 
VENIREMEMBER: Just our weekly payments.
 
THE COURT: Tell me about your family. What does your family consist
of.
 
VENIREMEMBER: They are all married and nobody lives at home only my
one daughter came back to us. She is pregnant and she is not working.
 
THE COURT: Do you live with your wife?
 
VENIREMEMBER: Yes, sir.
 
THE COURT: Does your wife have a job?
 
VENIREMEMBER: Not for the summer, especially now.
 
THE COURT: Where does she work?
 
VENIREMEMBER: Alice Independent School District but she is off for the
summer.
 
THE COURT: Okay. Do you have any questions of him, [the prosecutor].
 
THE STATE: So you will not receive any pay if you are not at your job?
 
VENIREMEMBER: No, sir.
 
THE STATE: Are you the only income earner for your family?
 
VENIREMEMBER: At this point, yes.
 
THE COURT: [Defense counsel] do you have any questions?
 
DEFENSE COUNSEL: No, I don’t.
 
THE COURT: All right. We will talk about your situation outside your
presence. In a few minutes, I will give you a decision. If you will, why
don’t you step out in the hallway. If you don’t mind, keep waiting for us
there. We will be as quick as we can.
 
THE COURT: What’s the defendant’s position.
 
DEFENSE COUNSEL: I feel sorry for him but I don’t think he is under –
 
THE STATE: Your Honor, I have no objection if the court wants to
excuse him. I have no objection to keeping him either.
 
DEFENSE COUNSEL: We probably have more than enough. If it turns
out that it’s not a big deal later on, I might change my mind. He looks
like a pretty good juror.
 
THE COURT: I am going to go ahead and excuse him.
 
DEFENSE COUNSEL: Note our objection to that.

II. Argument and Analysis.
         Section 62.110 of the Government Code, entitled “Judicial Excuse of Juror,”
provides:
(a) Except as provided by this section, a court may hear any reasonable
sworn excuse of a prospective juror and release him from jury service
entirely or until another day of the term. 
 
(b) Pursuant to a plan approved by the commissioners court of the county
in the same manner as a plan is approved for jury selection under Section
62.011, the court's designee may hear any reasonable excuse of a
prospective juror and discharge the juror or release him from jury service
until a specified day of the term. 

(c) The court or the court's designee as provided by this section may not
excuse a prospective juror for an economic reason unless each party of
record is present and approves the release of the juror for that reason.
 
Tex. Gov’t Code Ann. § 62.110 (Vernon 1998) (emphasis added). Appellant argues
the trial judge violated this statute in excusing the veniremember. Our decisional
authority has distinguished economic excuses from job-related excuses. For example,
in White v. State, 591 S.W.2d 851 (Tex. Crim. App. 1980), rev'd on other grounds,
892 S.W.2d 864 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals stated:
While the excuses offered by the five prospective jurors were job-related,
there is no showing that jury service for any of these individuals would
have resulted in the loss of a job, loss of compensation, salaries, wages,
etc., the suffering of a financial burden or other economic consequences. 
We do not conclude that they were excused for economic reasons. No
violation of [section 62.110] is shown.

Id. at 857.
         In the instant case, the veniremember offered only economic reasons for not
serving: “It is going to make a burden for me because my family because we we
count on my paycheck every week. It’s going to cost me $100 a day. If I stay here,
I won’t get paid.” Since this excuse included loss of compensation, salaries, wages, 
the suffering of a financial burden, and other economic consequences, we hold the trial
judge excused the veniremember “for an economic reason.” See Tex. Gov’t Code
Ann. § 62.110.
         The State responds that the trial judge, nevertheless, acted within the authority
of article 35.03 of the Texas Code of Criminal Procedure which provides, inter alia: 
“the court shall then hear and determine excuses offered for not serving as a juror, and
if the court deems the excuse sufficient, the court shall discharge the juror or postpone
the juror’s service to a date specified by the court.” Tex. Code Crim. Proc. Ann. art.
35.03 (Vernon 1989). By relying on this article, the State is arguing, in essence, that
article 35.03 of the code of criminal procedure trumps section 62.110(c) of the
government code.
         In Jasper v. State, 61 S.W.3d 413 (Tex. Crim. App. 2001), the court of criminal
appeals explained the difference between exemptions and excuses. See Jasper, 61
S.W.3d at 423-24. Exemptions are enumerated reasons a prospective juror is exempt
from service as a matter of law. Id. at 423 n.4. Excuses are not specifically
enumerated, but are considered on a case-by-case basis within the broad discretion of
the court. Id. at 423. The Jasper court then stated:
We have repeatedly held that a trial court has broad discretion to excuse
prospective jurors for good reason under article 35.03. The only statutory
restriction on excuses is that an excuse cannot be given for "an
economic reason" without the presence and approval of both parties.

Id. at 423-24 (citations omitted, emphasis added). From the plain language of Jasper,
article 35.03 does not trump section 62.110(c). In other words, when ruling on
excuses, the trial judge may not excuse a veniremember for an economic reason
without the approval of both parties. Consequently, the trial judge violated section
62.110(c) by excusing the second veniremember for an economic reason over
appellant’s timely objection.
III. Harm Analysis.
         Having determined the trial judge erred in excusing the second veniremember
for economic reasons, we must now address the question of harm. Under Texas Rule
of Appellate Procedure 44.2, our first task in deciding whether error in a criminal case
is harmless is to determine whether such error is "constitutional." Brown v. State,
960 S.W.2d 265, 271 (Tex. App.–Corpus Christi 1997, no pet.). When the error
stems from a violation of a rule or statute, the appellate court should look to the
underlying basis or purpose of the rule or statute to determine if it is constitutional in
nature. Carranza v. State, 980 S.W.2d 653, 656 (Tex. Crim. App. 1998) (“[W]hen
conducting a rule 44.2 harm analysis our first task is to determine whether [the
violation of statute] is an error of constitutional magnitude or an error which affects
a substantial right.”). If the error is derived from a statute or rule which serves a
constitutional purpose, we must apply the harm analysis for constitutional error. 
Brown, 960 S.W.2d at 271. For example, the Brown Court, in dealing with a violation
of article 38.22 of the Texas Code of Criminal Procedure, stated:
In the present case, although the specific protections of article 38.22
requiring written warnings and findings by the trial court concerning the
voluntary nature of the statement are statutory, they are meant to
implement the broader constitutional protection against involuntary or
coerced confessions and are thus of "constitutional dimension."

Id. at 271; see also Easley v. State, 986 S.W.2d 264, 267 (Tex. App.–San Antonio
1998, no pet.) (“Although the error at issue flows from non-compliance with a
statutory mandate, the error is nevertheless constitutional error because it implicates
the constitutional right against self-incrimination.”).
         Therefore, the issue is whether section 62.110(c) serves a constitutional
purpose. The background against which this question must be decided involves the
United States Supreme Court’s landmark cases dealing with the Sixth Amendment to
the Constitution. In Duncan v. Louisiana, 391 U.S. 145 (1968), the United States
Supreme Court held the Sixth Amendment's provision for jury trial is made binding on
the States through the Due Process Clause of the Fourteenth Amendment. Duncan,
391 U.S. at 149-50. Seven years later, the Supreme Court held the fair cross-section
requirement of the Sixth Amendment was also binding on the States. Taylor v.
Louisiana, 419 U.S. 522, 526 (1975). Taylor recognized that the presence of a fair
cross-section of the community on venires, panels, or lists from which petit juries are
drawn is essential to the fulfillment of the Sixth Amendment's guarantee of an
impartial jury trial in criminal prosecutions.


 Id. at 528 (“[T]he selection of a petit jury
from a representative cross section of the community is an essential component of the
Sixth Amendment right to a jury trial.”). Certainly, section 62.110(c) furthers the
requirement of the United States Constitution that the venire represent a fair cross-section of the community. U.S. Const. amend. VI. Therefore, we must apply the
harm analysis for constitutional error. Carranza, 980 S.W.2d at 656; Brown, 960
S.W.2d at 271.
         The Carranza Court recognized three types of constitutional error: (1)
constitutional error that is not subject to harmless error analysis (i.e., structural error);
(2) constitutional error that is harmful; and (3) constitutional error that is harmless. 
Carranza, 980 S.W.2d at 656. The immediate question, therefore, is whether the
instant error is structural error.
         Structural error is a defect in the constitution of the trial mechanism, which
defies analysis by harmless-error standards. Arizona v. Fulminante, 499 U.S. 279,
309 (1991). This is so because the defect affects the trial from beginning to end. Id. 
When this error is present, “a criminal trial cannot reliably serve its function as a
vehicle for determination of guilt or innocence, and no criminal punishment may be
regarded as fundamentally fair." Rose v. Clark, 478 U.S. 570, 577-78 (1986). The
Texas Court of Criminal Appeals has recognized that structural errors are categorically
immune from a harmless error analysis. Cain v. State, 947 S.W.2d 262, 264 (Tex.
Crim. App. 1997). While the language in Cain seems to indicate that structural errors
are limited to those specifically enumerated in Fulminante, the Fulminante Court and
the Cain Court implicitly recognized that the list of structural errors in Fulminante are 
exemplary, not exhaustive. In fact, the United States Supreme Court has since
recognized other errors as structural. See, e.g., Sullivan v. Louisiana, 508 U.S. 275,
281-82 (1993) (error in defining the State's burden of proof in the jury charge was not
subject to harmless error analysis); Fritz v. State, 946 S.W.2d 844, 847 (Tex. Crim.
App. 1997) (en banc) (erroneous use of peremptory strike on basis of gender not
subject to harm analysis); Batiste v. State, 888 S.W.2d 9, 15 (Tex. Crim. App. 1994)
(Batson error not amenable to harm analysis).
         The United States Supreme Court has long treated the errors which affect the
composition of venire, grand juries, and petit juries as structural error. See J.E.B. v.
Alabama ex rel. T.B., 511 U.S. 127, 135-36 (1994) (petit jury); Batson v. Kentucky,
476 U.S. 79, 85-86 (1986) (petit jury); Vasquez v. Hillery, 474 U.S. 254, 263-64
(1986) (grand jury); Duren v. Missouri, 439 U.S. 357, 359 (1979) (venire); Taylor,
419 U.S. at 526 (venire); Cassell v. Texas, 339 U.S. 282, 283-84 (1950) (grand jury);
see also Gibson v. State, 117 S.W.3d 567, 580 (Tex. App.–Corpus Christi 2003, no
pet.) (venire). As the Supreme Court stated in Taylor, “[T]he requirement of a jury's
being chosen from a fair cross section of the community is fundamental to the
American system of justice.” Taylor, 419 U.S. at 529. The Court went on to quote
the following from the debate on the floors of the House and Senate when enacting
legislation ensuring this Sixth Amendment right:
It must be remembered that the jury is designed not only to understand
the case, but also to reflect the community's sense of justice in deciding
it. As long as there are significant departures from the cross sectional
goal, biased juries are the result -- biased in the sense that they reflect a
slanted view of the community they are supposed to represent. 
 
Id. at 530 n.7. Biased juries, like partial judges, Tumey v. Ohio, 273 U.S. 510, 523-24 (1927), are structural defects which defy harm analysis.
         In the instant case, the violation of section 62.110(c) affected the composition
of the venire. This type of error is structural and, therefore, not subject to a harm
analysis.


 Accordingly, the first point of error is sustained.


 Because of our disposition
of this point of error, we need not address any remaining issues. See Tex. R. App. P.
47.1. 
         The judgment of the trial court is reversed and remanded.
 
                                                                                                    
                                                                        CHARLES F. BAIRD,
                                                                        Justice
 
 Do not publish.
TEX. R. APP. P. 47.2 (b)
 
Opinion delivered and filed
this 12th day of February, 2004.