BLACK V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-388-CR

DAVID WAYNE BLACK APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant David Wayne Black appeals his jury conviction on two counts of aggravated assault and one count of violation of a protective order.  In two points, Appellant challenges the legal and factual sufficiency of the evidence supporting the aggravated assault conviction and the deadly-weapon finding made in conjunction with the finding of a violation of the protective order.  We affirm.

Background

Appellant fathered six children with his common law wife, Penny
 
Black.  The couple and their children lived together off and on for many years until, on July 7, 2004, in cause number 322-369512-04 in the 322nd Judicial District Court, Penny obtained a protective order against Appellant enjoining him from communicating with her in a threatening or harassing manner and going within 200 yards of certain locations.
 

On the evening of July 17, 2004, ten days after the protective order issued, Appellant contacted Penny by phone at her home.  Penny testified that Appellant convinced her to meet him by promising to provide money for their children.  Penny left in her van with three of their children to meet Appellant around 9:00 or 9:30 in the evening.  

Penny and her children met Appellant in a convenience store parking lot.  Penny stated that Appellant pulled his vehicle next her vehicle so that the driver’s side doors faced each other while the vehicles faced opposite directions.  Penny said that Appellant stood outside of her driver’s-side window for the duration of their conversation.  Penny testified that Appellant became hostile and agitated during their conversation and at one point reached his arms into the car through Penny’s driver’s-side window, which was one-third of the way down.  After talking for about twenty minutes, Penny eventually agreed to allow Appellant to come to her home as a ruse to enable her to get away and use her cell phone to call 911.  

At that point, but before Penny drove out of the convenience store parking lot, Appellant returned to his car, sat down, and shut his car door.  Then, according to Penny, Appellant reached under his car seat and pulled out a knife “with a very sharp blade and a hook on the end.”  Penny testified that the blade of the knife appeared to be about five inches long.  Penny stated that, while holding the knife with the blade pointing toward the car door so that Penny and Ashley could see it, Appellant threatened: “I’m going to slice ya’ll up tonight, tomorrow night, and every other night, until I kill your F’ing A’s.” Penny testified that when Appellant made this threat, her car window remained one-third of the way down while Appellant’s was all the way down.  Penny testified that she believed the knife to be a deadly weapon capable of inflicting death or serious bodily injury.  Penny further testified that she feared for her life because of Appellant’s threat and the knife.  After Appellant threatened Penny and Ashley, Penny fled the area in her van and called the police.  Penny said that Appellant pursued her and attempted to run her off of the road twice before eventually ending his pursuit.  Penny then pulled into a gas station where she met with the police and relayed the events of the evening.   

Penny and Appellant’s eleven-year-old daughter, Ashley Black, also testified about the evening’s events.  Ashley testified that Appellant became angry during his conversation with Penny.  Ashley stated that Appellant pulled out a knife with a “blade and hook on it” that “looked sharp” and said that he would “slice [her] and [her] family up tonight and every other night until he kill[ed them].”  Ashley said that Appellant held the knife so that she could see it and that she feared for her and her family’s lives because of Appellant’s threat to “slice them.”   

Officer Dunn arrived at the gas station in response to Penny’s 911 call. Upon arriving at the scene, Officer Dunn spoke with Ashley Black.  Officer Dunn testified that Ashley told him that Appellant had pulled out what she described as a “pocket knife” during his conversation with Penny.  Officer Dunn further testified that Ashley told him that Appellant spoke in a “mean and scary” voice while holding the knife.  According to Officer Dunn, a pocket knife can be a deadly weapon.  

The jury convicted Appellant of two counts of aggravated assault and one count of violation of a protective order.  In count one, the jury found Appellant guilty of intentionally or knowingly threatening imminent bodily injury to Penny Black while using or exhibiting a deadly weapon.  In count four, the jury found Appellant guilty of intentionally or knowingly threatening imminent bodily injury to Ashley Black while using or exhibiting a deadly weapon.  In count two, the jury found Appellant guilty of intentionally or knowingly violating a protective order.  In conjunction with count two, the jury also made an affirmative finding that Appellant’s knife constituted a deadly weapon.  The jury assessed Appellant’s punishment at thirty-five years for count one, twenty years for count two, and forty years for count four.  

Standard of Review

In two points, Appellant challenges the legal and factual sufficiency of the evidence.  
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Discussion

Aggravated Assault by Threat

In his first point, Appellant challenges the legal and factual sufficiency of the evidence supporting his convictions for aggravated assault. A person commits the offense of assault if the person intentionally or knowingly threatens another with imminent bodily injury.  
Tex. Penal Code Ann.
 § 22.01(a)(2) (Vernon Supp. 2006); 
Garrett v. State
, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981).
  Aggravated assault by threat is a “nature of conduct offense” that can be committed only by knowingly or intentionally causing the victim to reasonably apprehend imminent bodily injury because of a communicated threat. 
 In re S.B.
, 117 S.W.3d 443, 450 (Tex. App.—Fort Worth 2003, no pet.)
; Guzman v. State
, 988 S.W.2d 884, 887 (Tex. App.—Corpus Christi 1999, no pet.).  A threat can be communicated by actions or conduct as well as words.  
Blount v. State
, 452 S.W.2d 164, 166 (Tex. Crim. App. 1976).  A person commits the offense of aggravated assault if the person uses or exhibits a deadly weapon during the commission of an assault
.  
Tex.  Penal Code Ann.
 § 22.02(a)(2) (Vernon Supp. 2006); 
Butler v. State
, 928 S.W.2d 286, 288 (Tex. App.—Fort Worth 1996, pet. ref’d).  Because Appellant challenges the deadly-weapon element of aggravated assault in his second point, we will focus on the other elements of aggravated assault in analyzing his first point.  

Penny and Ashley’s testimony provides legally and factually sufficient evidence to support a finding that Appellant intentionally and knowingly threatened Penny and Ashley with bodily injury.  Both Penny and Ashley testified that Appellant’s threat to “slice ya’ll up . . . until I kill your F’ing A’s” caused them to fear for their lives.  Appellant thus knowingly and intentionally caused Penny and Ashley to reasonably apprehend bodily injury. Accordingly, the only element of assault that arguably lacks evidentiary support is “imminent bodily injury.”

Imminent means “near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.”  
Devine v. State
, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989); 
Neagle v. State
, 91 S.W.3d 832, 834 (Tex. App.—Fort Worth 2002, pet. ref’d) (quoting 
Black’s Law Dictionary 750 (6
th ed. 1990)).  A threat of imminent bodily injury requires a present rather than a future threat.  
Devine
, 786 S.W.2d at 270; 
Kessler v. State
, 850 S.W.2d 217, 222 (Tex. App.—Fort Worth 1993, no pet.).  

In determining whether a threat refers to future rather than imminent bodily injury, courts have considered the appellant’s present ability to carry out the threat and the remoteness of the triggering event.  
Devine
, 786 S.W.2d at 270-71; 
Hill v. State
, 844 S.W.2d 937, 938 (Tex. App.—Eastland 1992, no pet.); 
see also
 
Riggins v. State
, 1994 WL 525884, at *2 (Tex. App.—Houston [1st Dist.] Sept. 29, 1994, no pet.) (not designated for publication).  Appellant argues that, because he threatened Penny while both sat in their separate cars, he did not threaten “imminent bodily injury.”  Although two car doors stood between Appellant and Penny, Appellant nevertheless had the present ability to carry out his threat.  
See Hillburn v. State
, 627 S.W.2d 546, 548 (Tex. App.—Amarillo 1982, no pet.) (holding the threat of bodily injury imminent despite the fact that the appellant, who brandished a knife while threatening his victim, could not have consummated his threat because “locked car doors negated any ability to cause physical harm” to the victim); 
Tanksley v. State
, 656 S.W.2d 194, 196 (Tex. App.—Austin 1983, no pet.) (holding a prisoner’s being behind a locked jail door at the time he threatened the jailer with a sharpened toothbrush handle immaterial to the determination of the imminence of a threat).  From Appellant’s threat to “slice ya’ll up,” a reasonable inference may be drawn that he would do so when he accompanied Penny and Ashley to their house.  Appellant thus had the present ability to carry out his threat.  Further, Appellant did not condition his threat on some future, remote event.  Appellant gave “tonight” as the time frame for the execution of his threat.  As Appellant made his threat around 9:00 or 9:30 in the evening, “tonight” was “near at hand” and “impending.”  
See
 
Devine
, 786 S.W.2d at 270.  Thus, we hold the evidence is legally sufficient to support the jury’s finding that Appellant intentionally or knowingly threatened Penny and Ashley with imminent bodily injury.  We further hold the evidence, viewed in a neutral light, is factually sufficient to support the jury’s finding.  We overrule Appellant’s first point.  

Deadly Weapon

In his second point, Appellant challenges the legal and factual sufficiency of the evidence to support the deadly-weapon element of aggravated assault and the jury’s deadly-weapon finding made in conjunction with his conviction for violating the protective order.  To hold evidence legally sufficient to sustain a deadly-weapon finding, the evidence must demonstrate that:  (1) the object meets the statutory definition of a deadly weapon; (2) the deadly weapon was used or exhibited during the commission of the felony; and (3) other people were put in actual danger.  
Drichas v. State
, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); 
Ex parte Jones
, 957 S.W.2d 849, 851 (Tex. Crim. App. 1997).  The Texas Penal Code defines a deadly weapon as “anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.” 
Tex. Penal Code Ann.
 § 1.07(a)(17)(B) (Vernon Supp. 2006).  Although a knife is not a deadly weapon per se, the court of criminal appeals has held that an object such as a knife can be a deadly weapon if the actor intends to use the object in a way in which it would be capable of causing death or serious bodily injury.  
McCain v. State
, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000); 
Russell v. State, 
804 S.W.2d 287, 290 (Tex. App.—Fort Worth 1991, no pet.).  Wounds need not be inflicted before a knife can be determined to be a deadly weapon.  
Brown v. State
, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986); 
Rogers v. State
, 877 S.W.2d 498, 500 (Tex. App.—Fort Worth 1994, pet. ref’d). 

When the victim sustains no actual injury, the State must present evidence of other factors to establish that a knife is a deadly weapon.  
Blain v. State
, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); 
In re D.L.
, 160 S.W.3d 155, 166 (Tex. App.—Tyler 2005, no pet.).  The relevant factors include the following: (1) size, shape, and sharpness of the knife; (2) manner of its use or intended use; (3) testimony of the knife’s life-threatening capabilities; (4) the physical proximity between the victim and the knife; and (5) the words spoken by appellant.  
See, e.g., Thomas v. State, 
821 S.W.2d 616, 619-20 (Tex. Crim. App. 1991)
; 
Tisdale v. State
, 686 S.W.2d 110, 115 (Tex. Crim. App. 1985) (op. on reh’g);
 Williams v. State
, 575 S.W.2d 30, 32 (Tex. Crim. App. [Panel Op.] 1979); 
Garcia v. State
, 17 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).  No one factor is determinative, and the fact finder must examine each case on all of its facts to determine whether the knife is a deadly weapon.  
See Garcia
, 17 S.W.3d at 4.  

Appellant contends that the physical proximity between the victim and the weapon is a primary consideration in a deadly-weapon determination.  In support of his contention, Appellant cites two court of criminal appeals cases in which a lack of physical proximity between the knife and victim affected the knife’s capability to be deadly.  Appellant, however, overstates the importance of physical proximity to the holdings of these cases.  In 
Alvarez v. State
, the appellant swung a linoleum knife at a distance of four feet from a police officer.  566 S.W.2d 612, 613 (Tex. Crim. App. [Panel Op.] 1978).  The court considered this distance in its deadly-weapon determination, but did not find it determinative.  
Id
.  The court noted that testimony established neither the size nor shape of the linoleum knife nor that the victim feared for his life.  
Id
. at 614.  These factors, along with the four-foot distance from which appellant exhibited the knife, led to the court’s holding that the linoleum knife did not constitute a deadly weapon.  
Id
.

In 
Davidson v. State
, appellant held a knife with a three-inch blade at a distance of six feet from his victim.  602 S.W.2d 272, 273 (Tex. Crim. App. [Panel Op.] 1980).  Once again, the court considered this distance in its deadly-weapon determination but did not find it determinative.  
Id
.  The court noted the small size of the blade and the testimony of the victim that, although he feared for his life, his fear did not arise because of appellant’s exhibition of the three-inch knife, but rather because an assailant had previously robbed a friend in the same location.  
Id
.  The court held that under those circumstances the three-inch knife did not constitute a deadly weapon.  
Id
.

In this case, the evidence is legally and factually sufficient to support a finding that Appellant’s knife constituted a deadly weapon.  Although the State did not present the knife at trial, the testimony established the size, shape, and sharpness of the knife.  Both Penny and Ashley testified that the knife had a very sharp blade with a hook on it.  Penny described the blade of the knife as being five inches in length.  Officer Dunn testified that Ashley described the knife as a pocket knife.  Although Officer Dunn’s testimony regarding Ashley’s description of the knife potentially conflicts with her description at trial, this  conflict does not render the evidence insufficient.  When faced with conflicting testimony, we presume that the trier of fact resolved any such conflict in favor of the verdict and defer to that resolution.
 
 Turro v. State
, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993); 
see also Nickerson v. State
, 2005 WL 1356440, at *6 (Tex. App.—Fort Worth June 9, 2005, pet. ref’d) (not designated for publication).

Testimony addressed the manner of the knife’s intended use.  By holding the knife so that Penny and Ashley could see it while threatening to “slice ya’ll up . . . until I kill your F’ing A’s,” Appellant expressed an intent to use the knife to kill his family.  Testimony also addressed the physical proximity between the knife and Penny.  Although both Appellant and Penny sat in their respective vehicles when Appellant made his threat and exhibited the knife, this lack of physical proximity, in light of the evidence supporting the other factors, does not render the evidence insufficient to support a deadly-weapon finding.  
See
, 
e.g.,
 
Luna v. State
, 2000 WL 730661, at *3 (Tex. App.—Houston [1st Dist.] June 8, 2000, no pet.) (not designated for publication) (knife exhibited at a distance of six feet nevertheless held to constitute a deadly weapon due to testimony concerning size, shape, and sharpness of knife, intended use of the knife, capacity of the knife to cause serious bodily injury, and appellant’s threats); 
Pouncy v. State
, 2005 WL 1940116, at *3 (Tex. App.—El Paso Aug. 11, 2005, pet. ref’d) (not designated for publication) (knife exhibited at a distance of sixteen feet held a deadly weapon through testimony concerning other factors such as the size, shape, and sharpness of knife and capability of knife to cause serious bodily injury).

Testimony further addressed the knife’s life-threatening capabilities and the words spoken by Appellant.  Penny testified that the knife appeared to be a deadly weapon capable of causing bodily injury.  Penny also testified as to the threatening words spoken by Appellant while brandishing the knife.  We hold that the combination of these factors provides legally sufficient evidence to support the jury’s finding that Appellant’s knife constituted a deadly weapon.  We also hold the evidence, viewed in a neutral light, factually sufficient to support the jury’s deadly-weapon finding.  We overrule Appellant’s second point.

Conclusion

Having overruled Appellant’s two points, we affirm the judgment of the trial court.

ANNE GARDNER

JUSTICE

PANEL A: DAUPHINOT and GARDNER, JJ.; and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 31, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.